A93A1383. ABC HOME HEALTH SERVICES, INC. v. GEORGIA DEPARTMENT OF MEDICAL ASSISTANCE.
(439 SE2d 696)

BEASLEY, Presiding Judge.

This appeal, which we permitted under OCGA § 5-6-35 (a) (1), is from a decision of the superior court affirming a final administrative decision of the Georgia Department of Medical Assistance (DMA). At issue is the DMA's authority to assign a different classification to various locations of ABC Home Health Services, Inc. (ABC), for purposes of reimbursement under the Georgia Medicaid program, than had been designated by the federal Health Care Financing Administration (HCFA) and the Department of Human Resources (DHR) for purposes of Medicare.

The Medicaid program is a response by both governments, federal and state, to the need for health care for some of those who cannot afford it, each government recognizing its responsibility to provide this service. Our federal form of government, and the similar duty which each sovereign has in this area of social welfare, complicates the administration of the program. As illustrated in this case, there is further complexity inherent in congressional delegation of administrative authority from the federal executive to agencies outside the federal government, and in state legislative delegation not only of that administrative authority but also state administrative authority to a state-created agency. It is a successful symbiotic relationship, but it carries enormous administrative costs.

"Medicaid is a State-administered program to provide payment for medical services to clients of certain public assistance programs and other needy individuals at the State's option." State Medicaid Manual (issued by U. S. Dept. of Health & Human Services, HCFA) § 2084 (B). "The Medicaid program [codified in 42 USC § 1396 et seq., Title XIX of the Social Security Act, as amended] was created . . . for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U. S. 297, 301 (100 SC 2671, 65 LE2d 784) (1980). It is "jointly financed by the Federal and State governments and administered by States. Within broad Federal rules, each State decides eligible groups, types and range of services, payment levels for services, and administrative and operating procedures. Payments for services are made directly by the State to the individuals or entities that furnish the services." 42 CFR § 430.0.

Participation by a state is optional, but in order to receive federal funds a state plan for medical assistance must comply with federal requirements as set forth in the Code of Federal Regulations, Title 42, Chapter IV.

Title XIX provides for designation of a single state agency to administer or supervise the Medicaid program. 42 CFR § 431.10. The DMA of Georgia is an administrative agency created in 1977 by OCGA § 49-4-142 (a) (Ga. L. 1977, p. 384) to meet that requirement and fulfill that function. It is authorized to "adopt and administer a state plan for medical assistance in accordance with Title XIX of the federal Social Security Act of 1935, as amended. . . ." OCGA § 49-4-142 (a).

As the "single state agency" required by the federal statute and rules to administer or supervise the Medicaid program (42 CFR § 431.10 (a)) the DMA is authorized "to establish the amount, duration, scope, and terms and conditions of eligibility for and receipt of such medical assistance as it may elect to authorize pursuant to" the Georgia Medical Assistance Act of 1977. OCGA § 49-4-142 (a). It es-

tablishes the rules and regulations for executing the state plan, ibid, and for receiving "the maximum amount of federal financial participation available." OCGA § 49-4-157. "Provider of medical assistance" means a person or institution which is qualified to participate in the state plan, that is, to receive Medicaid reimbursement for medical services provided to persons eligible for medical assistance (Medicaid) under the state plan. OCGA § 49-4-141 (6), (7).

Under Section 601.9 of the DMA's Policies and Procedures for Home Health Services, a criterion or condition of participation in Medicaid is that: "Parent agencies, sub-units, and branch offices must meet the guidelines outlined in the Rules and Regulations for Home Health Agencies Chapter 290-5-38-.06 from the Department of Human Resources."

In creating the DMA in 1977 to adopt and administer the state Medicaid plan, the legislature reserved to the DHR the function of "establishing and maintaining certain standards for [those] seeking to become or remain providers and shall finally determine and certify whether [they] meet such standards." OCGA § 49-4-154. It also reserved to DHR the function of "[d]etermining and certifying the eligibility of" persons for Medicaid and the function of prescribing regulations assuring that certain notice to applicants be clear. Id. Nothing else, with respect to the Medicaid program, was assigned to DHR. Thus, as related to the providers, it simply retained authority to license and inspect them for health, safety, and the other concerns listed in OCGA § 31-7-153. Otherwise, DMA succeeded to all the rules, regulations, policies, procedures, and administrative orders of DHR relating to functions transferred to DMA. OCGA § 49-4-155. These separate functions are entirely consistent with 42 CFR § 431.610, which addresses the relations between the state agencies. Under subsection (b), a state plan must designate a state agency for maintaining *health standards* for Medicaid participants (DHR). Under subsection (c), a state plan must designate a state authority for maintaining standards *other than those relating to health* for Medicaid providers (DMA).

ABC provides nursing and medical services to home bound patients under the Home Health Services Program of the Georgia Medicaid program. In 1988, ABC operated seven home health agencies in each of the following cities: Albany, Atlanta, Brunswick, Dublin, Macon, Milledgeville and Valdosta. Each agency is enrolled and participates in Medicare and Medicaid. Each signed a statement of participation which incorporates by reference the DMA's Policies and Procedures for Home Health Services Manual. The relationship between the DMA and the agency is contractual. *State of Ga. v. Stuckey Health Care*, 189 Ga. App. 126 (375 SE2d 235) (1988). See also *Briarcliff Haven v. Dept. of Human Resources*, 403 FSupp. 1355

(N.D. Ga. 1975). Each was assigned a Medicare number by the HCFA and a separate Medicaid number by the Provider Enrollment Unit of the DMA. Under Medicaid rules and regulations, each operated as a "parent" provider, possessing a separate license, certificate and provider number.

In late 1988, ABC sought and subsequently obtained approval from the HCFA to consolidate five of the seven "parent" provider agencies into "branches" for Medicare purposes. The DMA was not involved in making this change, since it has no authority in connection with Medicare.

DHR is the state agency "responsible for establishing and maintaining health standards" for both Medicare and Medicaid eligibility. 42 CFR § 431.610 (b). The DHR Division of Standards & Licensure certified ABC under the specific configuration consisting of two parent companies, one for north Georgia (Atlanta) and one for south Georgia (Valdosta), each serving multiple branches in their respective enlarged geographical areas. Under that system, ABC billed the DMA for services performed in the branch cities at the higher rates assigned by DMA to the parent cities.

ABC billed Medicaid under its Atlanta and Valdosta parent provider numbers in January 1989 and received reimbursement. During February through July 1989, it inadvertently billed Medicaid under the seven previous provider numbers, and thereafter requested retroactive reimbursement from the DMA under the two regional provider numbers.

The DMA refused reimbursement, disallowed further billing under the two provider numbers and notified ABC of its intent to void and recover approximately $1,340,000 in payments previously made under the two-number system. DMA's stated reason was that ABC's parent-branch structure did not meet the DMA's criteria for a branch office. It cited noncompliance with Section 601.9 of the DMA's Manual of Policies and Procedures for Home Health Services. That provision refers to Rule 290-5-38-.06 of the Rules and Regulations for Home Health Agencies of the DHR for guidelines as to branch and parent office criteria. Failure to comply would result in the suspension or termination of all seven ABC agencies from participation in the Home Health program.

ABC requested administrative review of the DMA's decision (1) prohibiting ABC from using only the Atlanta and Valdosta provider numbers to bill the DMA, and (2) requiring ABC to refund the difference between what it was paid under the two-number system for the months of January through November 1989, and what it would have been paid during that period under seven parent provider numbers. When it failed to obtain administrative relief, ABC filed a petition for review in the superior court under OCGA § 50-13-19 of the Adminis-

trative Procedure Act.

The superior court ruled that the grant of corrected licenses and certification by the DHR is not inconsistent with the DMA's authority to refuse reimbursement under the two-number parent-branch provider structure since the DMA has responsibility and obligation for ensuring that the reimbursement rate for ABC's services, based on the published reimbursement rates for various geographical areas of the state, reflects its actual cost of operations.

1. ABC enumerates as error the superior court's affirmance of the DMA's decision to disallow its participation in the Medicaid program through an organizational structure approved by the DHR. It contends that the DHR is the exclusive state agency permitted to certify organizations for participation in the Medicare and Medicaid programs and the DMA had no statutory authority to make such a decision. ABC misconceives DHR's role in the Medicaid scheme.

In order to enroll in the Home Health Services Program as a provider of services to home-bound Georgia Medicaid recipients, a home health agency such as ABC, must (i) be currently licensed; (ii) be currently certified to render services in the Medicare program; and (iii) have a Certificate of Need (if established after June 30, 1979). State Medicaid Manual, Sections 601.1A through 601.1C. The license issued by DHR designates on its face the counties in which an agency is authorized to do business in Georgia. Licensing is performed by DHR under authority of OCGA § 31-7-150 et seq., an article under the Health Code, whereas Medicaid reimbursement is provided by DMA under authority of OCGA § 49-4-140 et seq., an article under the Public Assistance Code.

The DHR licenses home health agencies based on its standards for "the care, treatment, health, safety, welfare, and comfort of patients served . . . and for the maintenance and operation of [the] agencies which will promote safe and adequate care and treatment of the patients." OCGA § 31-7-153. It periodically inspects the licensed agencies to assure compliance with the standards. OCGA § 31-7-154. Such agencies may not be operated in Georgia without a DHR-issued license, OCGA § 31-7-151, a prerequisite for which is a certificate of need from the State Health Planning Agency. OCGA § 31-7-155.

The rules adopted by DHR for Home Health Agencies are for the purpose of implementing DHR's authority "to establish the licensing procedures and standards of operation" for such agencies. DHR Rule 290-5-38-.01. Within those rules, Rule 290-5-38-.06 (c) defines an organizational structure comprised of "parents" and "branches" for operation of a home health agency. As defined in DHR Rule 290-5-38-.06 (c): " 'Branch Office' means a location or site identified in the application or endorsement thereto from which a Home Health Agency provides services within a portion of the total geographic area served

by the parent agency. The branch office is part of the Home Health Agency and is located sufficiently close to share administration, supervision, and services in a manner that renders it unnecessary for the branch independently to meet the requirements of these rules and regulations."

Subsection (q) defines "Parent Home Health Agency" as "the agency that develops and maintains administrative controls of subunits or branch offices." These definitions are for the purpose of the DHR's licensing and regulation of standards of operation, as stated in Rule 290-5-38-.01. They are substantially identical to the definitions imposed by OCGA § 31-7-150 for the purpose of implementation of Article 7, which governs the regulation of home health agencies under the Health Code.

DMA contends that DHR's certification is to ensure that a provider meets federal health and safety standards for purposes of enrollment, but that DMA looks to the license and certificate of need to determine the geographical area served. It asserts that notwithstanding DHR's certification as a two-parent organization, ABC's "branches" do not meet the applicable criteria because they are not within the geographical area specified on the Atlanta and Valdosta licenses and are not sufficiently close to the parent to share administration and supervision. DMA contends that it is not bound by DHR's two-parent certification in administering the Medicaid program.

Each of ABC's seven agencies is separately licensed and each license specifies the area within which the agency may provide services. ABC's agencies in Dublin, Macon and Milledgeville are not within the approved service area for the Atlanta agency as specified on the licenses. ABC's agencies in Albany and Brunswick are not within the approved service area for the Valdosta agency as listed on the licenses. An agency may not operate a branch which is outside the total geographic area served by the parent agency. DHR Rule 290-5-38-.06.

Each of ABC's seven Statements of Participation in the Georgia Medicaid program provides that it "establishes the means and terms of reimbursement between [DMA] and the [agency]." Those documents incorporate by reference, and require compliance with, DMA's Policies and Procedures Manual. Each can only operate a branch which is within the geographic area served by the parent and which is close enough to share administration, supervision and support services. Because these requirements were not satisfied by ABC's two-parent structure, DMA was authorized to disallow reimbursement on that basis.

2. ABC contends that the trial court erred in affirming DMA's decision because there was no finding that it failed to meet the DHR definition of a "branch" under DHR Rule 290-5-38-.06. The relevant

inquiry is whether ABC's licenses authorized the two-parent operation for Medicaid reimbursement. As we concluded, billings under the Atlanta and Valdosta provider numbers exceeded the permissible scope of the licenses and were not based on the actual costs, to which ABC was bound by its contract.

DHR designates parent/branch for its own licensing and inspection purposes. Since it does not administer the Medicaid funds, its parent/branch classification is not intended for Medicaid reimbursement purposes. That is within the authority of DMA, which is responsible for disbursement of those federal and state funds in a manner and in amounts which come within the appropriations. "All payments to providers of services must be based on the 'reasonable cost' of services covered under title XVIII of the [Social Security] Act and related to the care of beneficiaries. . . ." Provider Reimbursement Manual, § 2100. "The [DMA] will reimburse each Home Health Agency a specific rate per visit for covered services. The specific rate per visit is the total of the agency's inflated base rate, any efficiency incentive applicable to the agency, and a supply rate." State Plan Attachment 4.19B. "The cost per visit is based on the Medicaid cost reports for each agency's fiscal year. . . ." Manual § 1001.1 "Each provider in a chain organization, or other group of providers, . . . must file a separate, individual cost report." Provider Reimbursement Manual, § 2414.5.

The fact that all three agencies (HCFA, DHR, and DMA) use the same definition for "branch" and "parent" agency does not require DMA to apply the definition to a given situation in the same manner as the others do. Each performs a different function and applies the definition for a different purpose based on separate authority. DHR's certification to DMA that ABC qualifies for Medicare merely establishes one of the prerequisites for Medicaid reimbursement eligibility. The fact that ABC is paid under the Medicare program on a two-member, two parents/five branches provider structure does not control DMA's independent authority and obligation to reimburse under the Medicaid program based on a prescribed and published rate for the locality for which the agency is licensed and has a certificate of need.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED DECEMBER 1, 1993 —
RECONSIDERATION DENIED DECEMBER 17, 1993 —

*Phears & Moldovan, H. Wayne Phears, Victor L. Moldovan, Rebecca L. Laymon, Bishop & Lindberg, James A. Bishop*, for appellant.

*Michael J. Bowers, Attorney General, Kathryn L. Allen, Grace E. Lewis, William C. Joy, Mary F. Russell, Senior Assistant Attorneys General,* for appellee.