A02A1182. SMITH v. DEPARTMENT OF HUMAN RESOURCES
et al.
(570 SE2d 337)

PHIPPS, Judge.

Lawanda Smith owned and operated an assisted living facility primarily for Medicaid recipients enrolled in a state and federally funded program known as the "Community Care Services Program" (CCSP). Following an anonymous complaint of inadequate heating and food at the facility, the Georgia Department of Human Resources (DHR) issued a directive immediately relocating all CCSP residents, and the Georgia Department of Medical Assistance (DMA) terminated Smith's Medicaid provider status. The directive, however, was later rescinded.

Both individually and through her corporation, Smith then sued DHR, DMA, the private case manager responsible for relocating the facility's residents, and an employee of the case manager. Smith's pri-

---

[11] *Jackson v. State*, 209 Ga. App. 217, 221 (7) (433 SE2d 655) (1993).
[12] *Johnson v. State*, 255 Ga. App. 721, 725 (4) (566 SE2d 440) (2002).

mary claim is that DHR knew that the complaint of inadequate heat and food was false and unfounded, but used it as a pretext to relocate the residents in a malicious, racially motivated, and successful effort to destroy her business. Smith also complains that the government agencies implemented the decision to relocate the residents without giving her an opportunity to appeal, thereby violating her due process rights[1] and committing a breach of contract.[2] In addition, Smith seeks damages for a variety of torts she claims the defendants committed in their efforts to relocate the residents. By an amendment to her complaint, she invoked the Georgia Tort Claims Act (GTCA).[3]

The trial court awarded summary judgment to the case manager and its employee on the ground that the case manager was an independent contractor doing business with the State and, therefore, not subject to being sued under the GTCA. The court dismissed Smith's tort claims against DHR and DMA on grounds that they have immunity from suit under the GTCA. The court awarded summary judgment to DHR and DMA on Smith's breach of contract and due process claims, finding that Smith was notified of and waived her appeal rights. We conclude that the trial court erred in granting summary judgment to the case manager and its employee under the GTCA, that the court also erred in dismissing Smith's due process and breach of contract claims against DHR and DMA, but that the court did not err in awarding summary judgment to the latter defendants on Smith's tort claims.

DHR operates the CCSP through its Division of Aging Services (DAS). The CCSP provides monies and services to assist in placing Medicaid recipients in community-based "personal care homes" rather than nursing homes. The CCSP is administered by private nonprofit agencies known as regional development centers, which contract with DAS. The regional development centers in turn subcontract with private for-profit case managers, who place and monitor the elderly in the homes.

In order to be a CCSP service provider, a facility must be licensed as a personal care home and certified as an authorized Medicaid provider. When those conditions are met, DMA issues a Medicaid provider number to the facility operator. If the facility is found not to be in compliance with any applicable rules or regulations,

---

[1] See *Case v. Weinberger*, 523 F2d 602, 606 (2nd Cir. 1975) (Medicaid service provider entitled to due process, i.e., notice and an opportunity to be heard, before being terminated as Medicaid provider); *Washington Nursing Center v. Quern*, 442 FSupp. 23, 26 (S.D. Ill. 1977) (same).

[2] See *ABC Home Health Svcs. v. Ga. Dept. of Med. Assistance*, 211 Ga. App. 461, 463 (439 SE2d 696) (1993) (recognizing existence of contractual relationship between DMA and Medicaid service provider under Georgia's Medicaid program).

[3] OCGA § 50-21-20 et seq.

DHR may recommend that the provider number be withdrawn, and the provider's license may be suspended. Also if DHR receives information that CCSP personal care home residents may be at risk of harm, it may recommend that they be relocated to other facilities.

The Medicaid participation agreement between DHR and providers such as Smith incorporates a policies and procedures manual that requires DHR to give written notice of its intent to suspend or terminate a provider's participation in the Medicaid program. The provider is then given a right of administrative appeal. A request for appeal must be submitted to DHR within 20 days of the date of the notice proposing the adverse action, but this period may be shortened through written notice by the department when it determines that endangerment of health, safety, or welfare would otherwise result.

As an initial matter, the manual gives the Medicaid provider "the right to submit documents and written argument" when requesting an administrative appeal of proposed action by DHR to terminate the provider's participation in the Medicaid program. The manual later states, however, that failure to submit documents and written argument along with the request for appeal "shall constitute a waiver by the provider of any and all further appeal rights."

DHR sent Smith a letter dated January 30, 1998, informing her that due to failure to correct serious regulatory violations found at her facility, it would instruct CCSP personnel to relocate all their clients and would recommend that Smith's Medicaid provider status be terminated. The letter informed Smith of requirements that "[t]o oppose/appeal this action a written request for administrative review must be received by [DAS] within 15 days of receipt of this notice" and that "[t]he request must be accompanied by any supporting documentation you wish [DAS] to consider."

On February 16, caseworkers employed by the defendant case manager investigated Smith's facility after an anonymous telephone caller complained to the regional development center of inadequate heat and food in the facility. The caseworkers conducting that investigation have testified by affidavit that they accurately reported to DHR that the investigation found the complaint unfounded. Nonetheless, DHR sent Smith another letter dated February 17 informing her that it had ordered the immediate relocation of all of her CCSP clients to another facility. The reason given was that the residents were at risk due to current conditions in the facility, such as insufficient heat and food.

On February 17, Smith submitted a written request for administrative review of the department's decision. DHR responded with a letter dated February 19 informing Smith that her request for administrative review was denied "because you failed to submit any supporting documentation for further consideration."

1. Smith first contends that the trial court erred in awarding summary judgment to the case manager and its employee.

The court's ruling was premised on the ground that Smith is seeking to hold these defendants liable as joint tortfeasors with the state agencies. The trial court reasoned that the case manager is an independent contractor doing business with the state and, as such, is specifically excluded from coverage under the GTCA.[4] We cannot agree with the trial court's reasoning or ruling.

Although Smith invoked the GTCA in her pleadings, her tort claims against the case manager and its employee are not affected by operation of this statute. Through the GTCA, the state has enacted a waiver of sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment.[5] But the waiver is limited, as the GTCA provides for numerous exceptions to state tort liability.[6] Moreover, the GTCA immunizes the state officer or employee from tort liability by requiring the government entity for which the officer or employee was acting to be named as the party defendant.[7]

That the case manager and its employee do not fall within the coverage of the GTCA, therefore, simply means that the tort claims against them rest on the same footing as do similar claims against any other nongovernmental defendants. In other words, the GTCA provides a shield to the government agencies, but not to the case manager and its employee. As a result, the court erred in awarding summary judgment to the latter two defendants under the GTCA.

2. Smith contends that DHR and DMA are entitled neither to a dismissal nor to summary judgment.

(a) We agree that the trial court erred in awarding summary judgment to the state agencies on Smith's breach of contract and due process claims.

In so ruling, the trial court found that Smith was notified of her right to appeal and waived it by failing to comply with the requirement of the policies and procedures manual that documentation and written argument be submitted in support of a request for appeal. We find material questions of fact on the waiver issue. DHR's January 30 letter to Smith was worded in such a way as to indicate that the submission of supporting documentation was optional. The next written communication to Smith was the February 17 letter, which contained no mention of her right of appeal. Then, in the February 19 letter,

---

[4] OCGA § 50-21-22 (7) (excluding an "independent contractor doing business with the state" from the definition of the term "state officer or employee").

[5] OCGA § 50-21-23 (a).

[6] OCGA § 50-21-24 (1) through (13).

[7] OCGA § 50-21-25.

DHR informed Smith that her request for administrative review had been denied because she failed to comply with the mandatory requirement to submit supporting documentation. Under these facts, a jury could find that any waiver by Smith of her appeal rights was tainted by misleading communications sent to her by DHR.

(b) DHR and DMA seek immunity from Smith's state tort claims under two exceptions set forth in the GTCA.

One exception provides that the state shall have no liability for losses resulting from: "[i]nspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the state to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety."[8] The other exception immunizes the state from liability for losses resulting from: "[l]icensing powers or functions, including, but not limited to, the issuance, denial, suspension, or revocation of or the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization."[9]

Clearly, the latter provision exempts the state from liability for losses sustained by Smith as a result of revocation of her approval as a Medicaid provider. Because removal of the CCSP residents from Smith's facility constituted action by the DHR in enforcement of its decision to revoke Smith's Medicaid authorization, the state cannot be held liable in tort for DHR's action in this regard. Consequently, summary judgment was properly entered in favor of the state agencies on Smith's tort claims.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Mikell, J., concur.*

DECIDED MAY 30, 2002 —
RECONSIDERATION DENIED AUGUST 14, 2002.

*Leonard Danley*, for appellant.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Jennifer L. Dalton, Assistant Attorney General, Dock H. Davis*, for appellees.

---

[8] OCGA § 50-21-24 (8).
[9] OCGA § 50-21-24 (9).