A05A0482. GEORGIA FORESTRY COMMISSION v. CANADY.
(617 SE2d 569)

ELLINGTON, Judge.

Tray Canady, who was injured in a wreck on a smoke-covered highway outside Ludowici, brought suit in the Superior Court of Long County against the Georgia Forestry Commission ("the Commission"), the Georgia Department of Transportation, the Georgia State Patrol, and a forest management company employed by the owner of the property where the smoke originated. After a hearing, the trial court granted the motion for summary judgment filed by the State Patrol but denied the motions for summary judgment filed by the Commission and the Department of Transportation. Following the grant of its application for interlocutory review, the Commission appeals, contending the trial court misconstrued applicable law regarding sovereign immunity and the Commission's duties to the public. For the reasons which follow, we affirm in part and reverse in part.

> In reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the evidence. To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation and punctuation omitted.) *English v. Fulton County Bldg. Auth.*, 266 Ga. App. 583 (597 SE2d 626) (2004).

Viewed in the light most favorable to Canady, the record shows the following facts. In December 2000, Sabine & Waters of Georgia, Inc. ("Sabine"), a forestry management company, managed a tract of approximately 190-200 acres of timber land near U. S. Highway 301

in Long County for the owner, Harry Chapman. On the morning of December 5, 2000, Sabine employee Donald Pickard requested permission from the Commission to do a controlled burn of a 30- to 50-acre section of Chapman's property. Earlier, timber had been harvested from the Chapman property, and Sabine was engaged in the process of preparing the site for replanting through a series of controlled burns.

After consulting Commission guidelines and detailed weather forecasts for December 5, Robert Long, a Chief Ranger for the Commission, authorized the burn with the stipulation that Sabine begin the burn early and end the burn early so that the smoke could dissipate before evening. The permit, which was issued verbally and documented in a burning authorization log, expired at 6:00 p.m. According to Long, he told Pickard that no smoke should be rising from the site at that time.

In accordance with the instruction to end the controlled burn early, Pickard and another Sabine employee, Shane Harrelson, finished actively setting fire at about 3:00 p.m. As they checked the fire breaks circling the burned area, Pickard and Harrelson discovered that the fire had jumped the fire break and had begun burning the adjacent section, which lay between Highway 301 and the section for which Sabine had a permit to burn on December 5. Harrelson contacted the Commission to report the fire's escape into another section and to ask for instructions. Ranger Kevin Anderson took the call. The Commission had the authority and ability to take steps to extinguish the fire. After considering the circumstances, Anderson said the Sabine employees could go ahead and burn the other area, though to what extent is disputed. Burning the additional area entailed actively setting new fire and not simply refraining from suppressing the fire. Sabine employees considered the additional burning in the second area to be an extension of the permit they obtained that morning.

At 3:35 p.m., Anderson called the State Patrol and reported that the Commission had allowed a controlled burn that day and that there might be a problem with smoke in the area. At about the same time, a highway maintenance foreman for the Department of Transportation observed smoke blowing across Highway 301 and placed signs on the highway that warned "Caution Smoke and Fog Ahead." At about 4:00 p.m., Long saw heavy smoke coming from the area of the controlled burn and went to investigate. Long found that the fire had jumped the perimeter firebreak and ignited undergrowth in the wooded buffer area between the clear cut tract and the roadway. Long summoned Commission employees and directed them in extinguishing the fire. Ludowici firefighters also responded to Long's call and assisted in putting out the fire. Ultimately, approximately four times

the intended area had burned, all the way to the edge of the highway. At about 5:30 p.m., Long returned to his office and called the State Patrol. Long advised the dispatcher that there had been a fire and there might be a possible hazard on the road that night. Long asked the State Patrol to have troopers check it during the night. The dispatcher responded that she would make a note of it. Long did not ask that warning signs be put up. At that point, Long went home; the Commission took no further steps to monitor visibility on the highway or the response of the State Patrol or the Department of Transportation.

Although there were no open flames after Commission employees and local firefighters left the scene, several very large piles of timber harvesting debris in the second section continued to smolder and generate smoke. Long knew that such piles of timber debris, known as "smokers," would likely continue to generate smoke for several hours. From weather forecasts used in deciding whether to issue burning permits, Long also knew that conditions for smoke dispersal that evening were expected to be "very poor."

Shortly after midnight, the car in which Canady was a passenger struck the rear of a large commercial truck traveling in the dense smoke on Highway 301. A second large truck then struck Canady's vehicle from behind. Another accident occurred involving other vehicles. A State Patrol officer who responded to the accidents described the smoke as "so thick you can't see your hand" and "so thick you need a gas mask." At that point, the State Patrol closed the highway to traffic.

In his action for damages, Canady alleged that, given weather conditions and other circumstances prevailing on December 5, 2000, the Commission was negligent in issuing a permit for the burning of timber land adjacent to Highway 301. Canady also alleged that the Commission was negligent in failing to notify other governmental entities and agencies that it was probable that smoke from the burning on the Chapman property would obscure visibility on the highway. In moving for summary judgment, the Commission argued that the undisputed facts establish that it did not issue a permit for the burning of the second section and that it notified the State Patrol of the smoke hazard in accordance with an inter-agency policy designed to address such visibility problems. The Commission argued that it is immune from Canady's suit because the State has provided exceptions to the general waiver of sovereign immunity for losses resulting from its permitting powers and functions,[1] and from

---

[1] See OCGA § 50-21-24 (9).

its failure to provide, or the method of providing, fire protection.[2] The trial court denied the Commission's motion for summary judgment on three grounds. First, the trial court concluded that the undisputed evidence established that the Commission did not exercise its permitting function with regard to the burn at issue, whether by issuing a new permit or by modifying an existing permit. Accordingly, the trial court concluded, the permitting exception to the waiver of sovereign immunity did not apply. Second, the trial court found that the "smokers" caused the dangerous condition on the highway only after the Commission had completed its fire control activities. As a result, the trial court concluded the fire protection exception to the waiver of sovereign immunity did not apply. Finally, the trial court concluded that questions of fact remained regarding whether the Commission negligently failed to apprise the State Patrol and the Department of Transportation of the high risk of a visibility hazard during the evening.

1. As a preliminary matter, we note that several provisions of Title 12, Conservation and Natural Resources, help define the function and authority of the Commission. First, the General Assembly created the Commission to "foster, improve, and encourage reforestation" and promote "better forestry practices." OCGA § 12-6-5 (a) (1), (2). See also OCGA § 12-6-5.1 (legislative findings regarding the needs for improved reforestation). With regard to fire fighting, the General Assembly authorized the Commission "[t]o conduct and direct fire prevention work," that is, preventing, detecting, and combating fires. OCGA § 12-6-5 (a) (5). The Commission is authorized to control and extinguish uncontrolled fires on any forested or cut-over brush land or grassland. OCGA § 12-6-21. The Commission's director is authorized to prohibit controlled burning or to permit it "only upon such conditions and under such regulations as in his judgment are necessary and proper to prevent the destruction of property." OCGA § 12-6-17 (a).

In the Georgia Forest Fire Protection Act, OCGA § 12-6-81 et seq., the General Assembly reiterated the need to protect against uncontrolled fire and to preserve forest lands and forest resources and gave the Commission authority to direct and supervise "all forest fire protection work." OCGA §§ 12-6-81; 12-6-83. The legislature found that "prescribed burning is an effective method of reducing fuel loads and the potential hazards and impact associated with uncontrolled fires." OCGA § 12-6-81. The Forest Fire Protection Act requires permits for any intentional burning of vegetation, with certain

---

[2] See OCGA § 50-21-24 (6).

exceptions. OCGA §§ 12-6-90; 12-6-91. The Georgia Prescribed Burning Act, OCGA § 12-6-145 et seq., further developed the General Assembly's purpose of promoting "the continued use of prescribed burning for community protection, silvicultural, environmental, and wildlife management purposes." OCGA § 12-6-146 (b). "Prescribed burning" is defined as "the controlled application of fire to existing vegetative fuels under specified environmental conditions and following appropriate precautionary measures, which causes the fire to be confined to a predetermined area and accomplishes one or more planned management objectives or to mitigate catastrophic wildfires." OCGA § 12-6-147 (2).

2. The trial court denied summary judgment based in part on its conclusion that the undisputed evidence established that the Commission did not exercise its permitting function with regard to the burn of the second section. In so concluding, the trial court stated that the evidence showed that the Commission itself viewed the burn of the second section as "an unpermitted, unapproved activity." On appeal, the Commission contends that the permitting exception to the waiver of sovereign immunity did apply to its conduct and, therefore, that the trial court erred in denying summary judgment on this basis. In a related argument, the Commission contends the trial court exceeded its authority in ruling on the motion for summary judgment by making findings of fact regarding whether the burn of the second section was a permitted activity.

In the Georgia Tort Claims Act, the state waived its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment subject to certain exceptions and limitations. OCGA §§ 50-21-20; 50-21-23. One such exception provides that the state shall have no liability "for losses resulting from . . . [l]icensing powers or functions, including, but not limited to, the issuance, denial, suspension, or revocation of or the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization." OCGA § 50-21-24 (9).

Generally, issues of the waiver of sovereign immunity are issues of law for determination by the trial court. *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 673 (1) (b) (570 SE2d 1) (2002). Because "sovereign immunity is a threshold issue," a state agency is entitled to summary judgment as a matter of law if it can meet its burden on a motion for summary judgment of showing that it is exempt from liability on a plaintiff's claims. (Citation and punctuation omitted.) *Dept. of Transp. v. Cox*, 246 Ga. App. 221, 222 (540 SE2d 218) (2000).

Regardless of whether the Commission itself viewed the burn of the second section as "an unpermitted, unapproved activity,"[3] Canady seeks to hold the Commission liable for, inter alia, issuing a permit for the burning of timber land adjacent to Highway 301. By its plain language, this aspect of Canady's claim falls within the licensing exception to the general waiver of sovereign immunity, OCGA § 50-21-24 (9), and the trial court erred in denying the Commission's motion for summary judgment to this extent. *Smith v. Dept. of Human Resources*, 257 Ga. App. 33, 37 (2) (b) (570 SE2d 337) (2002) (where complaint alleged Department was negligent in revoking an assisted living facility operator's approval as a Medicaid provider, Department was entitled to summary judgment under the licensing exception to waiver of sovereign immunity); *Lewis v. Dept. of Human Resources*, 255 Ga. App. 805, 809-810 (567 SE2d 65) (2002) (where complaint alleged Department was negligent in failing to enforce regulations applicable to a personal care home where the decedent was fatally injured, Department was entitled to dismissal under, inter alia, the licensing exception to waiver of sovereign immunity); *Dept. of Transp. v. Cox*, 246 Ga. App. at 224-225 (where complaint alleged Department was negligent in approving a permit for the construction of a commercial driveway and in delaying issuing a permit for the installation of a traffic signal at the driveway, Department was entitled to summary judgment under the licensing exception to waiver of sovereign immunity); *Dept. of Transp. v. Bishop*, 216 Ga. App. 57, 58 (453 SE2d 478) (1995) (where complaint alleged Department was negligent in approving a permit for the construction of a decorative wall near a roadway, Department was entitled to summary judgment under the licensing exception to waiver of sovereign immunity). Accordingly, the trial court's order denying the Commission's motion for summary judgment is reversed with regard to Canady's claim that the Commission was negligent in issuing a permit for the burning of timber land adjacent to Highway 301.

3. The Commission contends the trial court erred in concluding that the Commission's conduct did not constitute "fire protection" as defined in the exception to the waiver of sovereign immunity. The Tort Claims Act provides, "[t]he state shall have no liability for losses resulting from ... the failure to provide, or the method of providing ... fire protection." OCGA § 50-21-24 (6).

---

[3] Even in this regard, the evidence was not undisputed. Although Anderson, who handled the 3:00 p.m. call, did not make a note of any additional authorized burning in the burning authorization log, and Long considered burning in the second area not to be permitted, it is undisputed that Anderson told Harrelson that Sabine employees could go ahead and burn some additional acres outside the area of the permit issued the morning of December 5.

As noted earlier, Canady alleged that the Commission was negligent in issuing a burning permit and in failing to notify other governmental entities and agencies of likely hazardous traveling conditions. Pretermitting whether issuing a burning permit is embraced within the term "fire protection," this conduct is already excepted from the general waiver of sovereign immunity, as discussed in Division 1, supra.

Accordingly, we will only consider whether notifying other governmental entities and agencies of hazardous traveling conditions resulting from smoke blowing across a highway is included in the term "fire protection." What constitutes "fire protection" under the Act is a matter of first impression, as the trial court noted. As we have observed, the Act, "by its own terms, must be strictly construed." (Citations and punctuation omitted.) *Camp v. Coweta County*, 271 Ga. App. 349, 352 (2) (609 SE2d 695) (2005). See OCGA § 50-21-23 (a).

Looking first to the general usage of the term "fire," the presence of flame is a defining characteristic of the process. See American Heritage Dictionary of the English Language (4th ed. 2000). Elsewhere in the Code, specifically in the Prescribed Burning Act, OCGA § 12-6-145 et seq., we see that the General Assembly addressed damage caused by smoke resulting from fire in separate terms from damage caused by fire. See OCGA § 12-6-148 (b) ("No property owner or owner's agent conducting an authorized prescribed burn under this part shall be liable for damages or injury caused by fire or resulting smoke unless it is proven that there was gross negligence in starting, controlling, or completing the burn."). In federal labor regulations, fire protection activities include those activities "which are required for, and directly concerned with, prevention, control or extinguishment of fires." 29 CFR § 553.210 (a).

In the absence of any authority on point, and guided by the authorities discussed above, we will not read "fire protection" so broadly as to include notification of other governmental entities of the possibility of reduced visibility after a fire. It follows that Canady's claim regarding the Commission's allegedly deficient notice to other governmental entities of a visibility hazard did not fall within the fire protection exception to the general waiver of sovereign immunity, OCGA § 50-21-24 (6). Because the Commission was not entitled to judgment as a matter of law on the basis of the fire protection exception to the waiver of sovereign immunity, we affirm the trial court's ruling in this regard. See *Edwards v. Dept. of Children &c. Svcs.*, 271 Ga. 890, 892-893 (525 SE2d 83) (2000) (reversing grant of summary judgment where subject exception to waiver of sovereign immunity did not apply).

4. The Commission contends the trial court erred in denying summary judgment based on its conclusions that there was evidence

the Commission failed to "properly inform" the Department of Transportation and the State Patrol of the hazardous driving conditions and failed to "confirm that the [State Patrol] would or could actually monitor the situation." The Commission contends that Georgia law does not authorize any tort recovery by a motorist on the basis of such conduct and that the trial court therefore erred in "creating" such legal duties.

It is undisputed that the Commission, in concert with the Department of Transportation and the State Patrol, "assume[d] the role and responsibility of reporting, monitoring, and managing" "fog, smog, smoke, or [a] combination of the three which reduce drivers' visibility" and pose a threat to Georgia's motorists. In a document entitled "Action Procedures for Reduced Visibility Driving Situations on State Roads" and executed on April 15, 2000, the heads of the three agencies agreed to certain goals and assigned responsibility for related tasks among the three agencies. In the event of "[s]moke, smog, etc.," the Commission undertook the following:

> Report to the nearest Georgia State Patrol headquarters the existence of limited visibility conditions and location. Coordinate with [Department of Transportation] Officials to insure [sic] that signs are properly posted. Advise the Georgia State Patrol of the existence of large control[led] burns or wildfires in the vicinity of state roadways.

In the event of fog, the Commission agreed to "[a]dvise the Georgia State Patrol of the existence of fires in the vicinity of state roadways," and to "[r]efuse permits for outdoor burning until the problem dissipates." The State Patrol undertook to dispatch a unit to assess a reported poor visibility situation and determine and coordinate the necessary response. In the case of reported fires near roadways, the State Patrol agreed to make routine checks of major highways to become aware of any potential problems. The Department of Transportation agreed to dispatch crews to the scene for proper placement of warning signs.

In this case, it is undisputed that Commission employees Anderson and Long called the State Patrol to report that there had been a large fire near Highway 301, but the record does not establish as a matter of law that the Commission performed this undertaking with the required degree of care. In addition, the record does not establish as a matter of law that the Commission coordinated with the Department of Transportation to ensure that signs were properly posted. Because material questions of fact remain for resolution by a jury with regard to whether the Commission breached a duty to the motoring public to properly inform the Department of Transportation

and the State Patrol of hazardous driving conditions, we affirm the trial court's ruling in this regard.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Adams, J., concur.*

DECIDED JULY 6, 2005 —
RECONSIDERATION DENIED JULY 26, 2005 —

Thurbert E. Baker, Attorney General, Hicks, Casey & Barber, Mark W. Wortham, Freeman, Mathis & Gary, Matthew P. Stone, Sun S. Choy, Harris & Bunch, Frank P. Harris, Crim & Bassler, Joseph M. Murphey, for appellant.

Jones, Osteen, Jones & Arnold, Billy N. Jones, G. Brinson Williams, Jr., for appellee.