S05G2002. GEORGIA FORESTRY COMMISSION v. CANADY.

(632 SE2d 105)

BENHAM, Justice.

This appeal brings into issue the breadth of an exception to the waiver of sovereign immunity found in the Georgia Tort Claims Act, OCGA § 50-21-20 et seq. (GTCA). In the GTCA, the State "waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances. . . ." OCGA § 50-21-23 (a). Pursuant to the statutory exception at issue, "[t]he state shall have no liability for losses resulting from: . . . [c]ivil disturbance, riot, insurrection, or rebellion or the failure to provide, or the method of providing, law enforcement, police, or fire protection." OCGA § 50-21-24 (6).

In *Ga. Forestry Comm. v. Canady,* 274 Ga. App. 556 (3) (617 SE2d 569) (2005), the Court of Appeals affirmed the trial court's decision that the Georgia Forestry Commission (GFC) was not entitled to judgment as a matter of law on the basis of the "fire protection" exception to the waiver of sovereign immunity. Faced with GFC's assertion of sovereign immunity in response to appellee Canady's allegation that GFC was negligent in failing to notify other governmental agencies it was probable that visibility on a state highway would be obscured by smoke from a fire which had started as a "controlled burn" permitted by GFC, the Court of Appeals addressed a question of first impression and declined to construe " 'fire protection' so broadly as to include notification of other governmental entities of the possibility of reduced visibility [due to smoke] after a fire." Id. at 562. We granted a writ of certiorari to the Court of Appeals to review that decision.

Sovereign immunity is a common law doctrine which was adopted in Georgia in 1784 and was given constitutional status in 1974, with the State remaining absolutely immune from suit until voters in 1983 approved a constitutional amendment waiving sovereign immunity in actions for which liability insurance protection was provided. *Gilbert v. Richardson,* 264 Ga. 744 (1) (452 SE2d 476) (1994). See also *State Bd. of Ed. v. Drury,* 263 Ga. 429 (1) (437 SE2d 290) (1993). After voters approved another constitutional amendment with regard to sovereign immunity, the Georgia Constitution now provides that

"sovereign immunity extends to the state and all of its departments and agencies [and] can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." 1983 Ga. Const., Art. I, Sec. II, Par. IX (e). The General Assembly passed a limited waiver of sovereign immunity in 1992 when it enacted the GTCA. *Riddle v. Ashe*, 269 Ga. 65 (2) (495 SE2d 287) (1998). In the GTCA, the General Assembly stated its legislative intent to strike a balance between "the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity" and the need to limit "[t]he exposure of the state treasury to tort liability" since "[i]n acting for the public good and in responding to the public need, state government must provide a broad range of services and perform a broad range of functions throughout the entire state, regardless of how much exposure to liability may be involved." OCGA § 50-21-21 (a). As noted above, the General Assembly went on to provide specifically for the State's waiver of sovereign immunity for "the torts of state officers and employees while acting within the scope of their official duties or employment . . ." (OCGA § 50-21-23 (a)), but expressly exempted from the waiver of sovereign immunity any liability for, among other things, "losses resulting from . . . the failure to provide, or the method of providing, law enforcement, police, or fire protection." OCGA § 50-21-24 (6).

We have not had occasion to construe that statutory provision; however, the Court of Appeals has addressed OCGA § 50-21-24 (6) with regard to law enforcement and has given the provision a broad construction. The Court of Appeals construed "method" to mean "a way of doing anything" (*Hilson v. Dept. of Public Safety*, 236 Ga. App. 638, 640 (512 SE2d 910) (1999)), and has examined in several cases whether the alleged negligent conduct occurred while the allegedly negligent employee was engaged in "providing law enforcement." See *Price v. State of Ga.*, 250 Ga. App. 872 (2) (553 SE2d 194) (2001) (actions taken by a ranger employed by the Department of Natural Resources to enforce environmental regulations constituted a method of providing law enforcement); *Hilson v. Dept. of Public Safety*, supra, 236 Ga. App. at 640 (pursuit of a speeding vehicle by a state trooper engaged in transporting prisoners is a method of providing law enforcement under OCGA § 50-21-24 (6)); *Blackston v. Ga. Dept. of Public Safety*, 274 Ga. App. 373 (618 SE2d 78) (2005) (state trooper's allegedly negligent performance of a method of law enforcement (chasing a speeder) by doing so in a manner that deviated from departmental procedure fell within the exception to the waiver of sovereign immunity); and *Long v. Hall County*, 219 Ga. App. 853, 857 (3) (467 SE2d 186) (1996) (the allegedly negligent supervision of a prison work detail by an employee of the Georgia Department of

Corrections was a failure to provide law enforcement services within the meaning of OCGA § 50-21-24 (6)). The Court of Appeals' broad definition of "method" requires the court to examine the task which engaged the state employee when the allegedly negligent conduct occurred and has resulted in the conclusion that the State is immune from liability when the allegedly negligent act was committed by an employee acting within the scope of employment when that employment is in the field of law enforcement. This broad construction of the "method of providing law enforcement" exception effectively negates, insofar as law enforcement, police, and fire protection personnel are concerned, the waiver of sovereign immunity in OCGA § 50-21-23 (a), which allows the State to be liable for the torts of state employees while acting within the scope of their employment. The construction of the exception in such a way as to swallow the rule to which it is an exception gives cause for concern since it does not promote the legislative intent to strike a balance between "the inherently unfair and inequitable results" of a strict application of sovereign immunity and limiting the exposure of the state treasury to tort liability. OCGA § 50-21-21.

The appellate courts in Texas, West Virginia, and Kansas have given a more narrow construction to each state's identical or nearly identical exception to the waiver of sovereign immunity in that state's tort claims act. In so doing, these courts have construed "method" as " 'a procedure or process for attaining an object' and as an 'orderly arrangement, development or classification,' " and deemed "method" to be synonymous with " 'mode,' 'plan,' 'design,' or 'system.' " *State of Texas v. Terrell*, 588 SW2d 784, 788 (Tex. 1979). See also *Beckley v. Crabtree*, 189 W. Va. 94, 97-98 (428 SE2d 317) (1993); *Jackson v. City of Kansas City*, 235 Kan. 278, 290-292 (680 P2d 877) (1984); *Cessna Aircraft Co. v. Metropolitan Topeka Airport Auth.*, 23 Kan. App.2d 1038, 1049 (940 P2d 84) (1997). We agree that "method" connotes an orderly procedure or process and adopt the definition used by Texas, West Virginia, and Kansas as more appropriate than that employed by our Court of Appeals.

Kansas limits coverage of its exception to the process of making policy decisions with regard to police and fire services by holding sovereign immunity covers only "such basic matters as the type and number of fire trucks and police cars considered necessary for the operation of the respective departments; how many personnel might be required; how many and where police cars are to operate; the placement and supply of fire hydrants; and the selection of equipment options." *Jackson v. City of Kansas City*, supra, 235 Kan. at 292, and *Cessna Aircraft Co. v. Metropolitan Topeka Airport Auth.*, supra, 23 Kan. App.2d at 1049.

Texas and West Virginia have construed their exceptions more expansively, believing that the legislative intent of the exception is to provide sovereign immunity to "those acts or omissions which constitute the execution of or the actual making of those policy decisions . . . made by a governmental unit in charge of providing police and fire protection. . . ." *State of Texas v. Terrell*, supra, 588 SW2d at 788. See also *Beckley v. Crabtree*, supra, 189 W. Va. at 98 ("[T]he phrase 'the method of providing police, law enforcement or fire protection' . . . refers to the formulation and implementation of policy related to how police, law enforcement or fire protection should be provided."). Both the Texas and West Virginia Supreme Courts saw as a purpose of the exception "to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions." *State of Texas v. Terrell*, supra, 588 SW2d at 787; *Beckley v. Crabtree*, supra, 189 W. Va. at 97.

The Supreme Court of Oklahoma has construed Oklahoma's statutory exception very narrowly. Viewing "protection" as the key concept, the Oklahoma court has limited invocation of sovereign immunity under the exception to injuries resulting from affording protective fire and police services and has declined to extend sovereign immunity to injuries resulting from the exercise of law enforcement duties. *Salazar v. City of Oklahoma City*, 1999 OK 20 (976 P2d 1056, 1068) (1999). In an earlier decision, the Oklahoma Supreme Court had declined to endorse the "policy-based" construction promulgated by Texas, Kansas, and West Virginia on the ground that limiting the exception to "policy decisions would render [the exception] meaningless since [another Oklahoma] subsection provides immunity for policy decisions." *Schmidt v. Grady County, Oklahoma*, 1997 OK 92 (943 P2d 595, 598) (1997).[1]

Like Oklahoma, Georgia has, in addition to allowing sovereign immunity for the "method of providing police, law enforcement, and fire protection," a statutory exception which immunizes from liability a state officer's or employee's exercise of or the failure to exercise a discretionary function or duty. OCGA § 50-21-24 (2). However, we do not see its existence as requiring us to distinguish the Texas-West Virginia-Kansas "policy-based" constructions. The scope of the "discretionary" exception in Georgia is limited by the statutory definition

---

[1] In *Wells v. City of Lynchburg*, 331 S. C. 296, 303-305 (501 SE2d 746) (S.C. App. 1998), the Court of Appeals of South Carolina, following the earlier decision from the Oklahoma Supreme Court, noted that South Carolina's statutory exception barred an action against a county for the alleged failure to provide adequate firefighting personnel and equipment and held the subsection barred a claim against a municipality for negligent maintenance and inspection of the fire hydrant system because the latter was an act incidental to the operation of the fire department and fell within the exception as a method of providing fire protection.

of "discretionary function or duty" contained in the GTCA to "a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors." OCGA § 50-21-22 (2). *Dept. of Transp. v. Brown*, 267 Ga. 6 (1) (471 SE2d 849) (1996). While there are decisions made by state employees or officers with regard to the amount, type, and disbursement of equipment and personnel *in anticipation* of the needs of police, law enforcement, and fire protection services that fall within OCGA § 50-21-24 (2)'s immunity from liability for losses from discretionary decisions as well as subsection (6)'s immunity from liability for the method of providing law enforcement, police or fire protection, there is a "second-tier" of decisions made by state employees and officers with regard to the amount, type, and disbursement of equipment and personnel *in response to a need* for the immediate provision of police, law enforcement, or fire protection services. These latter decisions set out the procedure or process for providing the necessary services — the mode, plan, design, or system to be used to provide the service — but are not covered by subsection (2) because they generally are not made "based upon a consideration of social, political, or economic factors" that subsection (2) requires. Instead, these "second-tier" decisions, based on professional standards, expertise, and training, set forth methods of providing the police, law enforcement, or fire protection services in response to immediate needs and receive sovereign immunity pursuant to subsection (6). Consequently, the existence in Georgia of a statutory exception to the waiver of sovereign immunity for "discretionary" decisions does not make pertinent to Georgia the Solomon-like construction given the "method of providing fire protection" exception by the Oklahoma Supreme Court.

We see the Texas-West Virginia construction of their exceptions as providing sovereign immunity that covers the acts or omissions of state employees in executing policy as well as in making policy. See *State v. Terrell*, supra, 588 SW2d at 788 (the exception covers "those acts or omissions which constitute **the execution of** or the actual making of those policy decisions"); *Beckley v. Crabtree*, supra, 428 SE2d at 321 (the exception "refers to the formulation and **implementation of** policy related to how police, law enforcement or fire protection should be provided") (emphasis supplied).[2] By immunizing

---

[2] We note that a more recent pronouncement from the West Virginia Supreme Court appears to be more limiting of the coverage of the exception. In *Smith v. Burdette*, 211 W. Va. 477, 481 (566 SE2d 614) (2002), the court ruled the exception referred to "the decision-making or the planning process in developing a governmental policy, including how that policy is to be performed . . . [and] does not provide immunity . . . for the negligent acts of [governmental] employees performing acts in furtherance of a method of providing police, law enforcement or

the State from liability for the acts and omissions of state employees executing or implementing policy decisions regarding the method of providing police, law enforcement, or fire protection in addition to immunizing the actual making of those policy decisions, Texas and West Virginia have provided complete protection of the policy-making decisions of the executive branches of government from judicial review. The policy decisions will not be "put on trial" in an action for damages either by a direct attack on the making of the policy or by an indirect attack via a lawsuit brought against a state governmental entity based on the alleged negligence of a state employee providing police, law enforcement, or fire protection pursuant to policy. We believe such a construction of subsection (6) accomplishes the balance between the inherently unfair and inequitable results from the strict application of sovereign immunity and the need to limit the State's exposure to tort liability that the General Assembly expressed as its goal in OCGA § 50-21-21.

In conclusion, we construe the exception to the waiver of sovereign immunity found in OCGA § 50-21-24 (6) as authorizing the application of sovereign immunity to the making of policy decisions by state employees and officers including those relating to the amount, disbursement, and use of equipment and personnel to provide law enforcement, police or fire protection services, and to the acts and omissions of state employees and officers executing and implementing those policies. Inasmuch as our rationale is at odds with that employed by the Court of Appeals in Division 3 of its opinion, we vacate that portion of the judgment of the Court of Appeals and remand the case to that court with direction that the case be remanded to the trial court with direction that the trial court proceed in a manner consistent with this opinion.

*Judgment vacated in part and case remanded with direction. All the Justices concur.*

DECIDED JUNE 26, 2006 —
RECONSIDERATION DENIED JULY 27, 2006.

*Howard & Whatley, Thomas G. Whatley, Jr.*, for appellant.
*Jones, Osteen & Jones, Billy N. Jones, G. Brinson Williams, Jr., Crim & Bassler, Joseph M. Murphey, Freeman, Mathis & Gary, Matthew P. Stone, Sun S. Choy*, for appellee.

---

fire protection." Under our construction of West Virginia's earlier position, negligent acts of employees acting pursuant to policy would be subject to the application of sovereign immunity while negligent acts of employees not acting pursuant to policy would not.