311 Ga. 588
FINAL COPY

S20G0695. JOHNSON v. AVIS RENT A CAR SYSTEM, LLC et al.
S20G0696. SMITH v. AVIS RENT A CAR SYSTEM, LLC et al.

MELTON, Chief Justice.

These cases arise from a car accident that occurred after Byron Perry stole a sport utility vehicle (SUV) from a rental lot where he worked and later crashed into Brianna Johnson and Adrienne Smith while Perry was trying to evade police. Johnson and Smith ("plaintiffs") each filed a lawsuit alleging claims of negligence and vicarious liability against the rental car company, Avis Rent A Car System, LLC, and Avis Budget Group (collectively "Avis"), along with Avis's regional security manager, Peter Duca, Jr.; the rental location's operator, CSYG, Inc.; and CSYG's owner, Yonas Gebremichael. Johnson and Smith also sued Perry, the CSYG employee who stole the SUV involved in the accident, although Johnson dismissed Perry before trial.

Separate juries found that Johnson and Smith were entitled to recover damages,[1] but both jury verdicts were reversed on appeal. In *Avis Rent A Car System, LLC v. Johnson*, 352 Ga. App. 858 (836 SE2d 114) (2019), the Court of Appeals concluded that Avis — the only entity found liable for compensatory damages in Johnson's case — was entitled to judgment notwithstanding the jury's verdict (JNOV) on Johnson's direct negligence claims because Perry's intervening criminal conduct[2] was the proximate cause of Johnson's injuries. See id. at 863 (2) (b).[3] And in *Avis Rent a Car System, LLC*

---

[1] In Johnson's case, the jury found that Avis was 100% at fault for Johnson's injuries and that Johnson was entitled to recover $7 million in damages from Avis. The jury found that CSYG, Gebremichael, and Duca were 0% at fault, and further found that Perry was 0% at fault as a non-party, but also found that Perry was liable for punitive damages. In Smith's case, the jury returned a $47 million verdict in favor of Smith, apportioned 50% to Avis, 1% to Duca, 15% to CSYG, 1% to Gebremichael, 33% to Perry, and 0% to "N.O." (a non-party who Perry claimed was actually driving the stolen SUV).

[2] In connection with the incident, Perry pled guilty to two counts of serious injury by vehicle (OCGA § 40-6-394), two counts of hit and run resulting in serious injury (OCGA § 40-6-270), one count of reckless driving (OCGA § 40-6-390), one count of fleeing or attempting to elude police (OCGA § 40-6-395), one count of failure to maintain lane (OCGA § 40-6-48), and one count of felony theft by taking (OCGA § 16-8-2), and was sentenced to twenty years to serve in prison.

[3] The Court of Appeals also concluded that Avis was entitled to JNOV on Johnson's claims that Avis was vicariously liable for CSYG and Gebremichael's

*v. Smith*, 353 Ga. App. 24 (836 SE2d 100) (2019), in addition to concluding that any breach of duty to secure the car rental lot and the stolen SUV was not the proximate cause of Smith's injuries (due to Perry's intervening criminal conduct), the Court of Appeals also concluded that CSYG and Gebremichael were entitled to a directed verdict on Smith's claims that they negligently hired and retained Perry, because Perry was not acting "under color of employment" at the time that he collided with Smith. Id. at 25 (2) and 29-30 (5).

Johnson and Smith petitioned for certiorari review in this Court, and we granted their petitions to address the following questions: (1) Did the Court of Appeals err in Divisions 2 of the opinions below in determining that the employee's intervening criminal conduct was the proximate cause of the plaintiffs' injuries, such that the defendants were entitled to judgment as a matter of law on the plaintiffs' direct negligence claims? and (2) Did the Court

---

negligence, including the negligent hiring and retention of Perry, because the verdicts in favor of CSYG and Gebremichael eliminated any basis for holding Avis liable through a theory of respondeat superior. See *Johnson*, supra, 352 Ga. App. at 864-865 (3).

of Appeals err in Division 5 of the *Smith* opinion in determining that the defendants were entitled to a directed verdict on Smith's negligent hiring and retention claim, because their employee was not acting "under color of employment" when he collided with Smith? For the reasons that follow, we determine that the Court of Appeals correctly concluded that the defendants could not be held liable to Johnson and Smith as a matter of law under the facts of these cases. Accordingly, we affirm in both cases. However, we reject some of the Court of Appeals' reasoning in the *Smith* case.

Viewed in the light most favorable to Johnson and Smith,[4] the evidence presented at both trials showed the following. Pursuant to an "Independent Operator Agreement" with Avis, CSYG was responsible for the day-to-day operations of an Avis car rental facility located on Courtland Street in Atlanta. In March 2012,

---

[4] See, e.g., *Pendley v. Pendley*, 251 Ga. 30, 30 (1) (302 SE2d 554) (1983) ("The standard for granting a directed verdict or a judgment notwithstanding the verdict [is] the same. Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed.").

Gebremichael hired Perry on behalf of CSYG to wash and refuel cars at the facility. At the time that Perry was hired, he disclosed to Gebremichael that he had been in prison, but he did not reveal the extent of his criminal record, and Gebremichael did not conduct a criminal background check to discover the extent of Perry's record.[5]

On the evening of August 23, 2013, Perry stole a Ford Edge SUV from the Courtland Street rental location after the facility was closed for the day.[6] Perry wore an Avis shirt while he drove the

---

[5] A criminal background check would have revealed that Perry's criminal record included arrests and convictions for, among other things, driving on a suspended license, DUI and drug-related offenses, and theft by receiving a stolen pickup truck in 1999 that involved reckless driving and an attempt by Perry to elude police.

[6] It is not clear from the record exactly how or when Perry stole the SUV after the lot closed around 7:00 p.m., but the plaintiffs theorize that he may have used bolt cutters to remove a spare key for the SUV from a key ring and he may have used a stolen gate key to exit the rental lot. However, even without knowing exactly how the SUV was stolen, we can assume for purposes of our analysis that Avis was negligent in allowing the vehicle to be stolen from its lot after hours, because the salient question in both cases is not about Avis's alleged negligence, but about whether its alleged negligence was the *proximate cause* of the plaintiffs' injuries. See *Atlanta Obstetrics & Gynecology Group v. Coleman*, 260 Ga. 569, 569 (398 SE2d 16) (1990) ("To recover damages in a tort action, a plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury.") (citation and punctuation omitted). We also assume only for purposes of addressing the first certiorari question that Avis had a duty to protect Johnson and Smith from

stolen SUV to provide an excuse in the event that he were pulled over by police. Perry intended to sell the vehicle that night, and he testified that he drove the SUV around Atlanta "for a few hours" in the hope of finding a buyer. Before Perry could find a buyer, however, police in a patrol car spotted him at around 11:30 p.m., driving the SUV erratically. When the officers approached Perry, he sped off in an effort to evade them. Perry reached a speed of 73 miles per hour in a 25 mile-per-hour zone just before he lost control of the SUV and crashed into a wall where Johnson and Smith were sitting, severely injuring them.

Prior to the incident involving Perry, one other car theft had occurred at the Courtland Street location. This theft occurred in

---

harm. See *Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565, 566 (713 SE2d 835) (2011) ("In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a *duty* on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty.") (citation omitted; emphasis supplied). We do not address whether Avis, in fact, had any duty to protect them from harm, as that issue is beyond the scope of the question presented. We note, however, that if Avis had no duty, the plaintiffs' claims would fail as a matter of law, just as they would when the evidence is lacking on the issue of proximate cause.

2012,[7] but there was no evidence presented that this prior theft involved a high-speed chase or other danger to the public.[8] Nevertheless, evidence was also presented at trial regarding Avis's general concerns about nationwide car rental thefts[9] and Avis's use

[7] Duca, Avis's regional security manager, testified that the Courtland Street location "experienced zero theft or missing vehicles" in 2010 and 2011, and Ryan Janos, the Avis district manager in Atlanta, testified that he was unaware of any thefts occurring at the Courtland Street location in the 50 years prior to 2012.

[8] In this 2012 incident, Perry was cleaning a Kia Sorento when he stepped away for a moment, leaving the keys in the car. A stranger then jumped into the car and drove away. Perry immediately reported the car as stolen, and an internal investigation by Avis led Avis to the conclusion that Perry was not a party to the theft. Perry was never arrested or charged in connection with this 2012 theft, but Gebremichael warned Perry that Perry could lose his job if he ever allowed anything like the 2012 theft to happen again.

[9] For example, between 2011 and 2013, about 500 cars were stolen per year from Avis lots nationwide out of a nationwide fleet in 2013 of about 320,000 cars. Plaintiffs also presented evidence of a 2010 high-speed chase – that did not result in injuries – after a rental car was stolen during the day from an Avis lot in LaGrange, Georgia, and evidence of three other crimes occurring after rental cars had been stolen in other parts of the country: (1) a 2001 incident in Tallahassee, Florida, where an Avis employee stole a car from a rental lot and rented the car out in an unauthorized "side deal," and the car was then involved in a high-speed chase that ended in serious injuries to another driver; (2) a 2011 incident in California where a stolen rental car was used in a convenience store robbery and a hit and run; and (3) a 2013 incident in Louisiana where employees stole a rental car that was later used in a shooting.

7

of a two-key system for its rental cars nationwide that made the cars more vulnerable to theft if someone were to cut one of the two keys from their common key ring.[10] And John Wotton, Avis's national security manager, testified in his deposition that a car thief "could" attempt to evade police after stealing a rental car, and he further conceded that if one of Avis's vehicles were stolen that people "could be" seriously injured.[11]

Even though Johnson and Smith presented no other direct evidence of additional car thefts at the Courtland Street location, because Avis had failed to produce and had destroyed certain "operator and location files" during discovery, the trial court gave a jury instruction that permitted an adverse inference — in other words, an instruction that allowed the jury to make an inference that information contained in those files "would have been

_____

[10] Avis maintained a two-key policy that required both car keys to remain with a rental car at all times to ensure that the duplicate key would be available when the time came to sell the car. The keys were supposed to be connected to each other on a steel security cable so that they could not be separated from each other without the cable being broken.

[11] Wotton's video deposition was played at both Johnson's and Smith's trials, and Wotton testified at both trials.

prejudicial to [Avis]." The operator and location files related to Gebremichael's operation of the Courtland Street location and a North Carolina Avis location, and contained information on disciplinary action taken after internal investigations into any crimes or other infractions that occurred at the Avis locations in question over the past several years. Thus, the prejudicial inference that was reasonably raised by the missing files (and that the jury was authorized to make based on the trial court's instruction) was that Avis must have known about additional car thefts at its facilities because the company would have disciplined employees in connection with at least some of these additional thefts. The jury instruction read:

> [Avis] destroyed the owner operator and location files for CSYG Incorporated. At [the] time [that Avis] destroyed the files, [it was] aware of the potential for litigation. The plaintiff is entitled to a presumption that the owner operator and location files would have been prejudicial to [Avis]. The presumption may be rebutted by [Avis]. This negative presumption does not apply to CSYG Incorporated or to Yonas G. Gebremichael.

> *Johnson and Smith*

9

Johnson and Smith argue that the Court of Appeals erred in concluding that Perry's intervening criminal conduct was the proximate cause of their injuries, because the evidence presented at trial on that issue did not demand a verdict in favor of the defendants. See, e.g., *Mosley v. Warnock*, 282 Ga. 488, 488 (1) (651 SE2d 696) (2007) ("The appellate standard for reviewing the grant of a judgment notwithstanding the verdict is whether the evidence, with all reasonable deductions therefrom, demanded a verdict contrary to that returned by the factfinder.") (citations and punctuation omitted). We disagree.

"Proximate cause is that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred." (Citation and punctuation omitted.) *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003). In this regard, a negligent actor who breaches a duty to another "is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual

10

experience." (Citation and punctuation omitted.) *Johnson v. American Nat. Red Cross*, 276 Ga. 270, 273 (3) (578 SE2d 106) (2003). It is important to recognize that

> "[p]robable," . . . in the . . . rule as to causation, does not mean "more likely than not," but rather "not unlikely"; or, more definitely, "such a chance of harm as would induce a prudent man not to run the risk; such a chance of harmful result that a prudent man would foresee an appreciable risk that some harm would happen."

Jeremiah Smith, Legal Cause in Actions of Tort, 25 Harv. L. Rev. 103, 116 (1911).

"The requirement of proximate cause constitutes a limit on legal liability; it is a policy decision that, for a variety of reasons, e.g., intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery." (Citation and punctuation omitted.) *Atlanta Obstetrics & Gynecology Group v. Coleman*, 260 Ga. 569, 569 (398 SE2d 16) (1990). The determination of whether proximate cause exists "requires both factfinding in the 'what happened' sense, and an evaluation of whether the facts measure up to the legal standard set by precedent." Id. at 570. And,

11

while proximate cause is ordinarily a jury question, "it will be determined by the court as a matter of law in plain and undisputed cases." (Citation omitted.) *McAuley v. Wills*, 251 Ga. 3, 7 (5) (303 SE2d 258) (1983).

Where, as here,

> a defendant claims that its negligence is not the proximate cause of the plaintiff's injuries, but that an act of a third party intervened to cause those injuries, the rule is that an intervening and independent wrongful act of a third person producing the injury, and without which it would not have occurred, should be treated as the proximate cause, insulating and excluding the negligence of the defendant. *Ontario Sewing Machine Co., Ltd. v. Smith*, 275 Ga. 683, 686 (2) (572 SE2d 533) (2002) (Citation and punctuation omitted.) But, this rule does not insulate the defendant "if the defendant had reasonable grounds for apprehending that such wrongful act would be committed." Id. (Citation and punctuation omitted.) Stated differently, if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act. Id. (Citation and punctuation omitted.)

*Goldstein, Garber & Salama, LLC v. J. B.*, 300 Ga. 840, 841-842 (1) (797 SE2d 87) (2017).

Thus, the question presented in this case is whether, after the defendants negligently allowed Perry to gain access to a car key and find a way to drive an SUV past the locked gate on the Courtland Street rental car lot after hours,[12] the evidence demanded the conclusion that the subsequent accident caused by Perry's criminal conduct was not a probable or natural consequence that could have been reasonably foreseen by the defendants. We hold that the evidence in this case demanded such a conclusion.

As the Court of Appeals correctly concluded below, the present case is analogous to those in which a car owner has left his or her keys unattended and a car thief then uses those keys to steal the car and causes an accident through his own negligent driving. See, e.g., *Long v. Hall County Bd. of Commrs.*, 219 Ga. App. 853, 855 (1) (467 SE2d 186) (1996). In such cases, the car owner generally cannot be

---

[12] Again, we assume without deciding that the defendants were negligent, as the issue to be resolved here relates only to the question of proximate cause.

held liable for injuries caused by the car thief because those injuries would not ordinarily be something foreseeable to the car owner. See id. ("The [mere] fact that the keys were left in the unguarded automobile would not authorize a recovery against the owner for the injuries which were the result of [the car's] subsequent negligent operation by [the] thief."). See also *Butler v. Warren*, 261 Ga. App. 375, 378 (2) (582 SE2d 530) (2003) ("Generally, a car owner does not act negligently simply by leaving the ignition key in a parked vehicle. Under certain circumstances, however, such conduct can result in liability. For example, if an owner knows that, on previous occasions when the key remained in the car, an incompetent driver took it on joy rides, a jury could find the owner negligent in subsequently leaving the key in the vehicle. This liability stems from the owner's actual knowledge and ability to reasonably anticipate the taking.") (punctuation and footnotes omitted); *Price v. Big Creek of Ga.*, 191 Ga. App. 534, 535 (382 SE2d 356) (1989) ("Mere ownership of an automobile involved in a collision may not be made the basis for holding an owner liable for the negligent operation of

14

the automobile without showing that the defendant owner was guilty of some other negligent act which proximately contributed to the plaintiff's injury. The fact that the keys were left in the unguarded automobile would not authorize a recovery against the owner for the injuries which were the result of its subsequent negligent operation by a thief.") (citations and punctuation omitted).

Here, there was no evidence that the defendants did anything more than negligently allow the SUV to be stolen from the Courtland Street lot. The evidence did not show that the defendants could have reasonably foreseen that Perry would lead police on a high-speed chase hours after stealing a car from the Courtland Street location and that a crash resulting in serious injuries would be the reasonably foreseeable consequence of the theft. In this regard, the direct evidence presented at trial showed that Avis was generally concerned about potential thefts of its vehicles nationwide, but that only one car theft had occurred at the Courtland Street location prior to the theft committed by Perry. The other evidence showed only two other specific instances of theft involving high-

speed chases among hundreds of thousands of vehicles at other Avis lots nationwide in the decade before the incident involving Perry. And, although one of these incidents (not resulting in injuries) happened in LaGrange, Georgia, in 2010, this would not make it reasonably foreseeable that a theft resulting in a high-speed police chase and injuries would occur in connection with the Courtland Street facility, which the direct evidence indicated had only one prior car theft that occurred in 2012 and no other thefts for the 50 years prior to 2012.[13]

And, with regard to the specific 2012 incident of theft at Courtland Street, that theft was nothing like the 2013 theft in this case, as it occurred during regular business hours with a third party stealing the car and did not involve a theft by an employee, a high-speed chase, or any other known danger to the public. Here, by contrast, Perry stole the SUV after the Courtland Street lot was closed and then drove around "for a few hours" looking for a

---

[13] But see also the discussion of spoliation, infra, relating to the adverse inference the jury was permitted to make.

potential buyer for the SUV before being spotted by police. Perry then decided to flee — apparently abandoning his initial plan to use his Avis shirt as an excuse in the event that he got pulled over — and crashed the SUV into a wall where Johnson and Smith were sitting.

While, as Avis's national security manager testified, it is possible that a car thief "could" attempt to evade police and that people "could be" seriously injured if a thief took such actions (as did Perry here), the direct evidence of the history and nature of thefts at the Courtland Street location and at Avis locations in general prior to the incident involving Perry did not show that the defendants in fact "had reasonable grounds for apprehending that [Perry's] wrongful act [against Johnson and Smith] would be committed." (Citation and punctuation omitted.) *Ontario Sewing Machine Co.*, supra, 275 Ga. at 686 (2). To the contrary, the evidence showed, at most, that an accident resulting in serious injuries during a high-speed chase following an after-hours car theft at the Courtland Street facility was "merely possible, according to

occasional experience, [and not] probable, according to ordinary and usual experience." (Citation and punctuation omitted.) *Johnson*, supra, 276 Ga. at 273 (3).[14] Compare *Martin v. Six Flags Over Ga. II, L.P.*, 301 Ga. 323, 332 (II) (A) (801 SE2d 24) (2017) (gang attack at bus stop near amusement park was reasonably foreseeable where multiple incidents of gang disturbances at the amusement park — including a gang-related fight — had occurred in the past and where attack on victim began on amusement park property).[15]

---

[14] We emphasize, however, that a reasonably foreseeable consequence does not need to be the "usual" result of the negligent act at issue, as the Court of Appeals incorrectly suggested in the *Johnson* opinion. Compare *Johnson*, supra, 352 Ga. App. at 862 (2) (b) ("Johnson failed to present evidence that a high speed chase ending in a crash injuring innocent bystanders *usually* happens when a car is stolen") (emphasis supplied), with *Coleman*, supra, 260 Ga. at 570 (holding that fact question existed on proximate causation where the injuries resulting from the negligent act "were *unusual*, but *entirely foreseeable*") (emphasis supplied), and Smith, supra, 25 Harv. L. Rev. at 116 ("'Probable,' . . . in the . . . rule as to causation, does not mean 'more likely than not,' but rather 'not unlikely[.]'").

[15] The fundamental problem with the dissent's position is that it conflates the concepts of negligence and proximate cause to create jury questions on proximate cause where none exist. Jury questions on proximate cause do not exist simply because it may be "possible" to connect a defendant's negligence to an otherwise unforeseen outcome, and to do so stretches the concept of proximate cause beyond its legal limits. For example, it would be "possible" for a car thief to decide to drive a stolen car to a convenience store, rob that store, and injure someone during the robbery. But, such an occurrence

18

The evidence did not show that the injuries caused by Perry

were the reasonably foreseeable "probable or natural consequence"

---

obviously would not be a probable or natural consequence of car thefts in general. In order to hold liable the initial negligent actor from whom the car was stolen, the evidence would have to show under the specific facts of the case that the negligent actor "had reasonable grounds for apprehending that [the] wrongful act [of robbing the store and injuring someone] would be committed." (Citation and punctuation omitted.) *Ontario Sewing Machine Co.*, supra, 275 Ga. at 686 (2). In other words, the evidence would have to show that the defendant could have reasonably foreseen that the subsequent robbery and injury were more than "merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience." (Citation and punctuation omitted.) *Johnson*, supra, 276 Ga. at 273 (3).

In this sense, the plaintiffs' and the dissent's reliance on *Hewitt v. Avis Rent-A-Car System*, 912 S2d 682 (Fla. Dist. Ct. App. 2005), is misplaced. *Hewitt* involved the 2001 Tallahassee incident discussed in footnote 9, supra, and a Florida appellate court held in that case that issues of fact existed regarding Avis's potential liability where an employee stole a rental car and injured the plaintiff during a high-speed chase because, "[o]nce the car was stolen, it may have been foreseeable that it would be operated in a manner hazardous to the public." Id. at 686. Again, while it may be reasonably foreseeable under the specific facts of a case that a theft may result in a high-speed chase and injuries, it is not reasonably foreseeable in every case of theft that a high-speed chase resulting in injuries is the anticipated consequence of the theft. See *Butler*, supra, 261 Ga. App. at 378 (2) (to be liable, car owner who leaves keys in ignition must have actual knowledge and ability to reasonably anticipate the taking and the subsequent dangerous driving, such as having knowledge of incompetent driver taking the car on joy rides in the past). To the extent that *Hewitt* implies that it is reasonably foreseeable in every case of car theft that a high-speed chase resulting in injuries is a reasonably foreseeable consequence of the theft, we disagree, and the dissent is incorrect for adopting *Hewitt*'s reasoning. But, in any event, that Florida decision is not binding on this Court, and we do not follow it.

19

of the defendants' alleged negligence in failing to secure the Courtland Street lot and the SUV. See, e.g., *Long*, supra, 219 Ga. App. at 855 (1). A "probable or natural consequence" is not the same thing as a "possible" consequence where that possible consequence is not reasonably predictable. Compare *McAuley*, supra, 251 Ga. at 7 (5) (death of child from complications during childbirth a year after mother became a paraplegic in car accident was a consequence that was "too remote" to sustain a wrongful death cause of action against driver who injured the mother) with *Martin*, supra, 301 Ga. at 332 (II) (A).[16]

The adverse inference that the jury was authorized to make based on the missing "operator and location files" does not change

---

[16] We note that, to the extent that Perry's specific prior criminal history could have alerted CSYG and Gebremichael to the possibility that Perry would steal a car and try to evade police, such evidence relates to their failure to investigate Perry's criminal background and the plaintiffs' allegations of *negligent hiring*. However, for purposes of the plaintiffs' *direct negligence* claims, there is no evidence that Avis, CSYG, and Gebremichael were independently aware of Perry's criminal history before he committed the crimes that led to the plaintiffs' injuries in this case. The negligent hiring claim will be addressed in connection with the second certiorari question in Case No. S20G0696.

the result.[17] Even to the extent that other employees were disciplined in connection with additional thefts at the Courtland Street facility — an inference the jury was permitted to make based on the instruction the trial court gave — that inference pertains only to Avis's negligent failure to prevent such thefts, not to any inference that employees were disciplined for injuring bystanders outside of the employees' regular working hours and at locations completely unconnected to Avis. And the issue of Avis's negligence is separate from the question of proximate cause. See, e.g., *Goldstein*, supra, 300 Ga. at 841 (1) ("[I]n order to recover for any injuries resulting from the breach of a duty, there must be evidence that the injuries were proximately caused by the breach of the duty.") (citation omitted). Here, additional thefts by other employees would not increase the likelihood that Avis could have reasonably foreseen that *Perry's* criminal actions would cause an accident with injuries following a high-speed chase several hours after stealing a car.

---

[17] We again note that the jury was instructed that it could not make this inference against Gebremichael or CSYG.

Moreover, other employee discipline does not change the fact that Perry's specific disciplinary record shows only that he was reprimanded in connection with one other reported 2012 car theft at the Courtland Street lot. In that 2012 incident, Gebremichael warned Perry that he could lose his job if he allowed another car to be stolen by a third party while he was at work. However, this incident did not involve any facts that would have alerted Avis to a potential future incident involving Perry himself stealing an extra key, exiting a locked rental lot in an SUV after hours, and injuring others while fleeing police.

Accordingly, the defendants were entitled to JNOV due to Perry's intervening criminal conduct being the sole proximate cause of the plaintiffs' injuries in this case. See *Long*, supra, 219 Ga. App. at 855 (1).

## *Smith Only*

Smith argues that the Court of Appeals erred in concluding that CSYG and Gebremichael were entitled to a directed verdict on her negligent hiring and retention claims, because there was

22

evidence to support the conclusion that Perry was acting "under color of employment" at the time that he collided with Smith. See, e.g., *Ammons v. Clouds*, 295 Ga. 225, 230 (2) (758 SE2d 282) (2014) ("A directed verdict is authorized only when 'there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict.'") (citations and punctuation omitted). We disagree.

An employer "is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency." OCGA § 34-7-20. And, where a plaintiff alleges that she is entitled to recover damages based on an employer's negligent hiring and retention of an employee who injured her, that plaintiff must show, "at the very least[, that] the [employee's] tortious act occurred  during the tortfeasor's working hours or the employee was acting under color of employment." (Citation and punctuation omitted.) *Harvey Freeman & Sons, Inc. v. Stanley*, 259 Ga. 233, 233-234 (1) (378 SE2d 857) (1989). These parameters exist "to shield employers from liability for those torts [that an] employee commits

23

on the public in general," id. at 234 (1), while at the same time allowing for a plaintiff to recover damages where "it is reasonably foreseeable that [the tortfeasor] employee may injure others in the negligent performance of the [employee's] duties." *Munroe v. Universal Health Svcs., Inc.*, 277 Ga. 861, 862 (1) (596 SE2d 604) (2004).

Because Perry did not injure Smith during his working hours, she had to show that Perry was acting "under color of employment" when he injured her in order to sustain a potentially viable negligent hiring claim against CSYG and Gebremichael. See *Harvey Freeman*, supra, 259 Ga. at 233-234 (1). In this regard, an employee can act "under color of employment" when that employee commits a tort against someone who has a business relationship or other "special relationship" with the employer and the tort arises out of that relationship. See id. at 234 (1) (a "landlord's potential liability [to a tenant] could rest on the special landlord-tenant relationship, even for acts [by the landlord's employee] which occurred in other than normal office hours and in other locations than the apartment

24

complex"). See also *TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 462 (1) (b) (590 SE2d 807) (2003) (an employer is shielded "from liability for torts that their employees commit on the public in general, that is to say, people who have no relation to or association with the employer's business"); *New Madison South Limited Partnership v. Gardner*, 231 Ga. App. 730, 734 (1) (499 SE2d 133) (1998) ("[T]he theory of negligent hiring/retention applies even if the tort was committed outside the scope of employment where there is a special relationship such as landlord-tenant between the tortfeasor and the victim and the tortious conduct arises out of the relationship.").

However, a special relationship between the injured party and the employer is not always required for the employee tortfeasor to *act* "under color of employment" in committing a tort. While the phrase "under color of employment" has not been clearly defined in our case law on negligent hiring and retention, the phrase "under color of" has been defined in other contexts that may be instructive. For example, a deputy sheriff acts "under color of office" when his

25

acts "are of such a nature that his official position does not authorize the doing of such acts, though they are done in a form that purports they are done by reason of official duty and by virtue of his office." (Citation and punctuation omitted.) *Culpepper v. United States Fid. & Guar. Co.*, 199 Ga. 56, 58 (33 SE2d 168) (1945). Similarly, a government employee acts "under color of state law or custom" (for purposes of a viable constitutional deprivation claim under 42 USCA § 1983) where that employee acts while in the course of his or her employment or does something "in pursuit of" a customary state practice that lacks express direction of state law. *City of Cave Spring v. Mason*, 252 Ga. 3, 4 (310 SE2d 892) (1984). An employee may similarly act "under color of" his employment where the employee commits acts that are not authorized by his employment, but does those acts in a form that purports they are done by reason of his employment duties and by virtue of his employment.

In this regard, the Court of Appeals has recognized that employees may act "under color of employment" in situations where they commit unauthorized acts in a manner that purports they are

done by reason and by virtue of their employment positions. For example, an off-duty police officer who uses his or her position in order to commit (or as a means of committing) a tort against another could be said to be acting "under color of employment" even though the injured party does not necessarily have any special relationship with the officer's employer. See *Graham v. City of Duluth*, 328 Ga. App. 496, 506 (2) (c) (759 SE2d 645) (2014) (where off-duty police officer identified himself as a police officer, put on his police vest and radio, showed his badge, attacked plaintiff with his department-issued pepper spray, and engaged in shoot-out with his department-issued service weapon, jury was authorized to find that officer could have been acting under color of employment); *Govea v. City of Norcross*, 271 Ga. App. 36, 39 (608 SE2d 677) (2004) (where off-duty police officer wore his police uniform and handed his service weapon to child who accidentally shot himself with it, jury was authorized to find that officer could have been acting under color of employment). In such cases, the employee tortfeasor committed acts that were not authorized by his employment, but did those acts in a

27

form that purported they were done by reason of his employment duties and by virtue of his employment as a police officer. See *Graham*, supra, 328 Ga. App. at 506 (2) (c); *Govea*, supra, 271 Ga. App. at 39. In this sense, the actions that led to the injuries were not necessarily unrelated to the officer's negligent hiring and employment, because the officer used his position to interact with the victim and to connect his at-work responsibilities to the actions that led to the victim's injuries. See *Graham*, supra, 328 Ga. App. at 506 (2) (c).[18]

In this case, it is undisputed that Smith had no special or business relationship with CSYG or Avis when Perry injured her outside of business hours, and the evidence does not support the conclusion that Perry was acting "under color of employment" at the time that he injured Smith. As an initial matter, while Perry had

_____

[18] While it is clear that an employee is not acting "under color of employment" when the employee's actions are "wholly unrelated" to his employment, *Graham*, supra, 328 Ga. App. at 506 (2) (c), this does not mean that an employee *is* acting "under color of employment" simply because one can find *any* conceivable connection between the employee's actions and that person's employment. Again, the employee must commit acts that are not authorized by his employment, but do those acts in a form that purports they are done by reason of his employment duties and by virtue of his employment.

access to Avis's vehicles during his regular working hours, he was not able to access the vehicles after hours as a function of his regular job duties. In this sense, Perry was not accessing the vehicles after hours by virtue of his employment as a car washer; he was simply stealing a rental car after hours. Indeed, Perry's role at Avis was quite different from that of someone like a police officer who used a service weapon or other police equipment outside of his or her regular working hours. Nor did Perry interact with Smith or represent himself as an Avis employee to her at the time that he stole the SUV or when he injured her as he fled from the police. The fact that Perry wore an Avis shirt when he stole the SUV does not suggest that he was acting "under color of employment" at the time of the collision, because the evidence presented at trial showed that Perry was wearing the shirt to cover up his crime if the police stopped him rather than as a means of representing to *Smith* that he was acting as an Avis employee when he collided with her. In other words, Perry's theft of an Avis rental vehicle and his subsequent accident involving Smith were not connected to his

employment duties and were not accomplished by virtue of his employment at Avis. Compare *Graham*, supra, 328 Ga. App. at 506 (2) (c).

Accordingly, the Court of Appeals was correct to conclude that Gebremichael and CSYG were entitled to a directed verdict on Smith's claims that they negligently hired and retained Perry. However, in reaching this conclusion, the Court of Appeals reasoned, incorrectly, that Perry was not acting "under color of employment" because the actions that he took were "against the defendants' interests or even crimes of which the defendants were victims." *Smith*, supra, 353 Ga. App. at 29 (5). Acting against an employer's interest does not drive the analysis regarding whether an employee is acting "under color of employment" for purposes of a negligent hiring and retention claim. Indeed, in nearly every case of negligent hiring and retention, it is likely the case that the tortfeasor employee has not acted in the employer's interest by committing a tort that leads to the employer being sued. Because part of the Court of Appeals' analysis relating to an employee acting "under color of

30

employment" by acting against a defendant's interest is incorrect, we reject it. However, "we ultimately affirm the judgment of the Court of Appeals" in concluding that Perry was not acting "under color of employment" at the time that he injured Smith. See, e.g., *White v. State*, 305 Ga. 111, 114 (823 SE2d 794) (2019) (affirming judgment of Court of Appeals, but rejecting the court's reasoning).[19]

*Judgments affirmed. All the Justices concur, except Warren, J., who concurs in judgment only, and Ellington, J., who dissents in part. Peterson and McMillian, JJ., disqualified.*

---

[19] We do not address the remaining issues raised by Smith in her appellate brief, as those issues are beyond the scope of the certiorari question posed in this case.

ELLINGTON, Justice, dissenting in part.

"[I]t is axiomatic that questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases." *Ontario Sewing Machine Co. v. Smith*, 275 Ga. 683, 687 (2) (572 SE2d 533) (2002) (citation and punctuation omitted). The decision whether proximate cause exists in a given case "may be made by the trial judge or appellate court only if reasonable persons could not differ as to both the relevant facts and the evaluative application of legal standards (such as the legal concept of 'foreseeability') to the facts." *Atlanta Obstetrics & Gynecology Group v. Coleman*, 260 Ga. 569, 570 (398 SE2d 16)

(1990).[20] In the two cases now before us, after a ten-day trial in one case and a thirteen-day trial in the other, two separate juries, thoroughly instructed on Georgia law regarding negligence, proximate cause, foreseeability, and intervening third-party criminal conduct,[21] unanimously found that the plaintiffs were entitled to recover on their direct negligence claims against Avis.[22] In my view, the evidence did not demand the conclusion that Perry's intervening criminal conduct was the sole proximate cause of the plaintiffs' injuries as a matter of law, because reasonable minds can differ as to the conclusions to be reached on the issue of proximate cause from the evidence presented at the trials. While I fully concur

---

[20] See also *Sherwood v. Williams*, 347 Ga. App. 400, 404 (1) (c) (820 SE2d 141) (2018) ("It is clear that[,] except in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached, questions of . . . proximate cause, including the related issues of foreseeability, . . . are for the jury." (citation and punctuation omitted)).

[21] On appeal, Avis does not enumerate any error regarding the jury instructions.

[22] The special verdict form used in each of these cases presented the jury with the question: "Was Defendant CSYG, Inc. an independent contractor or an employee of Avis Rent A Car System LLC and Avis Budget Group, Inc.?" Both juries determined that CSYG was an employee. In this dissenting opinion, "Avis" denotes Avis Rent A Car System, LLC, Avis Budget Group, Duca, CSYG, and Gebremichael.

in the majority's analysis and conclusion in *Avis Rent A Car System, LLC v. Smith*, 353 Ga. App. 24 (836 SE2d 100) (2019), that Perry was not acting "under color of employment" when he stole Avis's vehicle and later injured Smith, I believe that the trial court in both cases correctly denied Avis's motions for judgment notwithstanding the verdicts in connection with the plaintiffs' direct negligence claims against Avis and that the Court of Appeals erred in reversing those rulings. Accordingly, I respectfully dissent from the majority opinion on the issue of proximate cause.

In *Avis Rent A Car System, LLC v. Johnson*, 352 Ga. App. 858 (836 SE2d 114) (2019), the first of the instant cases to be decided, the Court of Appeals determined that Johnson failed to "muster[ ] evidence sufficient to distinguish [that court's] venerable line of authority" dealing with car owners' liability for injuries caused by car thieves, which all "held that the car thief's acts were the proximate cause of the plaintiff's injuries." *Johnson*, 352 Ga. App. at 863 (2) (b) (citation and punctuation omitted). The Court of Appeals specifically cited four cases: *Long v. Hall County Bd. of Commrs.*,

34

219 Ga. App. 853, 855 (1) (467 SE2d 186) (1996);[23] *J. C. Lewis Motor Co. v. Giles*, 194 Ga. App. 472, 472 (391 SE2d 19) (1990); *Price v. Big Creek of Ga.*, 191 Ga. App. 534 (382 SE2d 356) (1989); and *Dunham v. Wade*, 172 Ga. App. 391, 393 (2) (323 SE2d 223) (1984). See *Johnson*, 352 Ga. App. at 863 (2) (b). In the second of the instant cases to be decided, *Smith*, the Court incorporated its proximate-cause analysis from *Johnson.* See *Smith*, 353 Ga. App. at 25 (2). In *Dunham*, the Court of Appeals affirmed the dismissal of the plaintiff's complaint against the stolen car's owner, reasoning as follows:

> Mere ownership of an automobile involved in a collision may not be made the basis for holding an owner liable for the negligent operation of the automobile without showing that the defendant owner was guilty of some other negligent act which proximately contributed to the plaintiff's injury. . . . The fact that the keys were left in the unguarded automobile would not authorize a recovery against the owner for the injuries which were the result of its subsequent negligent operation by a thief. The persons immediately responsible will be held to full liability; but persons only so remotely connected with the injury can not be held [liable].

---

[23] *Long* was abrogated on other grounds in *Ga. Forestry Comm. v. Canady*, 280 Ga. 825 (632 SE2d 105) (2006).

*Dunham*, 172 Ga. App. at 392-393 (2) (citations and punctuation omitted). In that case, a driver parked on the street in front of her babysitter's home, left the keys in the ignition, and then was detained inside the babysitter's home for several minutes while her child was readied for departure. Id. at 391-392. In those few minutes, a stranger took the car on a joyride, resulting in the plaintiff's injuries. Id. Similarly, in *Price*, a stranger stole a pickup truck parked on a street "virtually immediately after [the driver] had exited it." *Price*, 191 Ga. App. at 535. The Court of Appeals quoted the above passage from *Dunham* in affirming the dismissal of the plaintiff's claim. *Price*, 191 Ga. App. at 535. In *Long*, a driver parked his truck "near a county work farm" and left it unattended and with the keys in it. *Long*, 219 Ga. App. at 854-855 (1). A prisoner escaped from a work detail in the area, stole the truck, and wrecked with the plaintiffs' vehicle. Id. at 853-854. The Court of Appeals affirmed the grant of summary judgment in favor of the defendant based on the reasoning in *Dunham* quoted above. *Long*, 219 Ga. App. at 855 (1). And, in *Giles*, where a car dealership was allegedly

negligent in leaving keys to a car "in a place accessible to [a] 15-year-old" youth, who stole the car and wrecked with the plaintiff's vehicle, the Court of Appeals relied on the *Dunham* reasoning to hold that alleging "only that [the owner] was negligent in permitting [its] car to be stolen" fails to state a claim upon which relief can be granted. *Giles*, 194 Ga. App. at 472.

Although the cases referenced in *Johnson*, like the cases now at issue, each involved a car thief who wrecked the stolen car and injured someone, there are significant dissimilarities between those cases and the instant cases. In the instant cases, unlike the opportunistic thieves in the cases referenced in *Johnson*, Perry, as an employee, had time to plan his crime. The jurors heard evidence that Avis's business practices, including the two-key system for the majority of its fleet, allowed employees like Perry to surreptitiously possess a key to a fleet car after business hours; to obtain a key to the facility's security gate; and to access the facility after hours. And Perry had the opportunity to learn that, because of Avis's business practices, the theft of a car key from a two-key set would not be

37

detected; the security gate lock would not be replaced after two managers' gate keys were reported missing; and no security cameras would be present to record his illicit activities. The juries heard evidence that Avis knew that the theft of fleet cars, including by Avis's employees, was a recurrent problem and that it needed to change its business practices to prevent such thefts — but failed to make the necessary corrections. Although only a relatively small number of stolen Avis cars may have been involved in "high-speed police chases," as the majority notes, a reasonable jury could find that Avis could reasonably anticipate that a person willing to steal a car would drive the stolen car in a manner representing a risk of serious harm to others in the thief's path, whether from a high-speed police chase or otherwise. Reasonable jurors could find from the evidence presented that Avis reasonably should have foreseen that, as a result of its lax practices, an employee would steal a vehicle and then drive it in a manner that would cause injuries to others.[24]

---

[24] As the majority notes in n. 9, supra, in addition to evidence regarding the high-speed police chase at issue in *Hewitt*, the jury received evidence that

Even if all of the Court of Appeals' prior keys-left-in-an-

unguarded-vehicle cases were correctly decided, which I doubt,[25] I

---

Avis knew that an employee stole a fleet vehicle and was chased by the police at 100 miles perhour in April 2010; a thief used a stolen fleet vehicle in a commercial robbery and in a hit-and-run in April 2011; and that a stolen vehicle was used in a shooting in July 2013.

[25] The Court of Appeals first announced without qualification that "[t]he fact that the keys were left in the unguarded automobile would not authorize a recovery against the owner for the injuries which were the result of its subsequent negligent operation by a thief" in *Dunham*, 172 Ga. App. at 393 (2), citing *Robinson v. Pollard*, 131 Ga. App. 105 (205 SE2d 86) (1974), *Chester v. Evans*, 115 Ga. App. 46 (153 SE2d 583) (1967), and *Roach v. Dozier*, 97 Ga. App. 568 (103 SE2d 691) (1958). This statement is overbroad. None of those cases, or any other pre-*Dunham* cases I have found, support the premise that a car thief is as a matter of law the sole proximate cause of any injuries to others resulting from the thief's operation of the stolen vehicle. See *Robinson*, 131 Ga. App. at 105; *Chester*, 115 Ga. App. at 46; *Roach*, 97 Ga. App. at 568. Rather, the fact that keys were left in an unguarded vehicle *alone* does not authorize a recovery on a direct negligence claim against the owner for injuries that result from the subsequent negligent operation of the vehicle by a thief, joy-rider, or other unauthorized user. See *Redd v. Brisbon*, 113 Ga. App. 23, 26-27 (147 SE2d 15) (1966) (explaining that the effect of the ruling in *Frankel v. Cone*, 214 Ga. 733 (107 SE2d 819) (1959), which held that former Code Ann. § 68-301 (1955) was unconstitutional because it authorized a recovery without fault against an automobile's owner for damages resulting from the negligent operation of the vehicle by another "in the prosecution of the business of" the vehicle's owner, "was that mere ownership of an automobile involved in a collision may not be made the basis for holding an owner liable for the negligent operation of the automobile *without showing that the defendant owner was guilty of some other negligent act which proximately contributed to the plaintiff's injury*" (emphasis supplied)). Cf. *Fielder v. Davison*, 139 Ga. 509, 511 (2) (77 SE 618) (1913) (discussing the applicability of "the rules of law touching master and servant and the liability of the former for the act of the latter" to a claim against the owner of an automobile for damages on account of an injury caused by the vehicle while driven by his employee in the scope of his employment).

believe that the instant cases at the very least can be distinguished from that "venerable line of authority."[26] At any rate, those Court of Appeals cases are not binding on this Court, and it is time to reaffirm the principle that, in Georgia tort law, the adjudication as a matter of law of questions of negligence and proximate cause is "an unusual circumstance." *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997). Our courts must do more than pay lip service to the principle that proximate cause is "generally" or "ordinarily" for the jury[27] while in practice making it commonplace to take the

---

[26] In some keys-left-in-an-unguarded-vehicle cases, even as the Court of Appeals affirmed judgment on the pleadings or summary judgment in favor of vehicle owners, the court recognized that an owner could be liable if prior similar incidents put the vehicle's owner on notice of a risk that the vehicle would be taken. See *Butler v. Warren*, 261 Ga. App. 375, 378 (2) (582 SE2d 530) (2003) ("[I]f an owner knows that, on previous occasions when the key remained in the car, an incompetent driver took it on joy rides, a jury could find the owner negligent in subsequently leaving the key in the vehicle." (punctuation and footnote omitted)); *Roach*, 97 Ga. App. at 571 ("We do not say that if an owner of a vehicle has actual knowledge that on previous occasions where he had left the key in a vehicle and the vehicle unattended, an incompetent driver had taken the vehicle on joy rides, a jury would not be authorized to find the owner negligent in subsequently leaving the keys in the vehicle and the vehicle unattended and accessible to the incompetent driver.").

[27] See *Preston v. Nat. Life & Acc. Ins. Co.*, 196 Ga. 217, 237 (26 SE2d 439) (1943) (Questions "as to negligence, proximate cause, and similar matters, should ordinarily be submitted to the jury; yet, . . . where the evidence as a whole excludes every reasonable inference but one, the court may so rule as a

40

question of proximate cause away from a jury.[28] See id.; see also

*Atlanta Obstetrics*, 260 Ga. at 570. In two cases cited by the majority,

*Martin v. Six Flags Over Ga. II*, 301 Ga. 323, 332 (II) (A) (801 SE2d

24) (2017), and *Hewitt v. Avis Rent-A-Car System*, 912 S2d 682, 686

(Fla. Dist. Ct. App. 2005), many case-specific circumstances

informed the inquiry into whether the plaintiff's injuries were not

merely possible but were reasonably foreseeable. Among many other

cases,[29] *Martin* and *Hewitt* illustrate why assessing foreseeability is

generally reserved for a jury, and courts should not adjudicate

proximate cause as a matter of law based on the single fact that a

---

matter of law."); *Bennett v. Dept. of Transp.*, 318 Ga. App. 369, 370 (734 SE2d 77) (2012) ("While the issue of proximate cause is generally a question of fact for the jury, it may be decided as a matter of law where the evidence is clear and leads to only one reasonable conclusion — that defendant's acts were not the proximate cause of the plaintiffs' injury." (citations and punctuation omitted)).

[28] In addition to the cases cited in *Johnson*, see *Bashlor v. Walker*, 303 Ga. App. 478, 482-483 (1) (b) (693 SE2d 858) (2010); *Butler*, 261 Ga. App. at 378 (2); *Williams v. Britton*, 226 Ga. App. 263, 263 (485 SE2d 835) (1997); and *Robinson*, 131 Ga. App. at 107-108 (1).

[29] See e.g., *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786-787 (482 SE2d 339) (1997).

third party's criminal act brought to fruition the risk of harm seeded by the defendant's negligence.[30]

I do not believe that the instant cases are among the unusual cases in tort law where proximate cause can be adjudicated as a matter of law. I respectfully dissent.

---

[30] The majority criticizes *Hewitt* to the extent it "implies that it is reasonably foreseeable in every case of car theft that a high-speed chase resulting in injuries is a reasonably foreseeable consequence of the theft[.]" See n. 15, supra. While I agree with the majority that *Hewitt* is not binding on this Court, I do not read *Hewitt* as the majority suggests. In *Hewitt*, the court reversed summary judgment in favor of Avis on the ground that reasonable persons could differ as to whether the facts established proximate cause based on "the combination of special circumstances that exist[ed] in the case at bar," including previous vehicle thefts from the facility, "the absence of any safeguards by management against theft[,]" and "the knowledge that Avis had, or should have had, of the harm that often occurs from the careless operation by thieves of stolen vehicles[.]" *Hewitt*, 912 S2d at 686. In my view, the reasoning in *Hewitt* simply reflects that the role of a jury, composed of representatives of the community and sitting as the finder of fact, requires the use of jurors' common sense and reasoning. A reasonable jury could conclude, as a matter of common sense in the jurors' judgment, that a criminal on the run in a stolen car can be expected to drive in an unsafe manner. A court asked to adjudicate proximate cause as a matter of law should not impose its own metric of a certain kind and number of prior incidents the court considers necessary to create a question of fact for the jury.

Decided May 3, 2021 —Reconsideration denied June 1, 2021.

Certiorari to the Court of Appeals of Georgia — 352 Ga. App. 858.

*Bondurant, Mixson & Elmore, Michael B. Terry, Christopher T. Giovinazzo, Naveen Ramachandrappa, Amanda K. Seals; The Law Offices of Michael Lawson Neff, Michael L. Neff, Darryl D. Adams, Susan M. Cremer, Timothy S. Peagler*, for appellants.

*Lewis Brisbois Bisgaard & Smith, Brantley C. Rowlen, Jason P. Wright; Downey, Cleveland, Parker & Williams, George L. Welborn; Swift Currie McGhee & Hiers, William T. Casey, Jr.; Holland & Knight, Laurie W. Daniel, Matthew D. Friedlander*, for appellees.

*The Hadden Law Firm, John D. Hadden, Fried Rogers Goldberg, Nathan A. Gaffney; Warshauer Law Group, Lyle G. Warshauer; Rogers & Fite, Brian D. Rogers; Penn Law, Darren W. Penn*, amici curiae (appellants).

*Shook, Hardy & Bacon, Mark Behrens, Caroline M. Gieser; Freeman Mathis & Gary, Philip W. Savrin; Nall & Miller, Alexia B.*

*Ruffner Roney; Drew, Eckl & Farnham, Jeffrey S. Ward, Elissa B. Haynes; Ellis Painter Ratterree & Adams, Philip M. Thompson; Balch & Bingham, Malissa A. Kaufold-Wiggins; Bryan Cave Leighton Paisner, William V. Custer IV, Jennifer B. Dempsey*, amici curiae (appellees).