**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 8, 2023**

# In the Court of Appeals of Georgia

A23A1056. SELF v. LOCAL MECHANICAL NETWORKING, INC.

A23A1057. CRANN v. LOCAL MECHANICAL NETWORKING, INC.

MARKLE, Judge.

Michael Self and Michael Crann were injured after Steve Moss took his employer's van and caused a series of traffic accidents. Self and Crann then separately sued Moss's employer, Local Mechanical Networking, Inc. (LMN), for negligence, alleging that LMN's employee failed to properly supervise Moss. The trial court granted LMN's motions for summary judgment, finding that Moss's intervening criminal conduct was the proximate cause of Self's and Crann's injuries. In these consolidated appeals, we consider whether Moss's intervening criminal

conduct relieves LMN of liability for the alleged negligence of its employee. For the reasons that follow, we conclude that it does and, therefore, we affirm.

> Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Gervin v. Retail Property Trust*, 354 Ga. App. 11 (840 SE2d 101) (2020).

So viewed, the record shows that Moss worked for LMN as a plumber's assistant. He reported to Robbie Alexander, the general superintendent. One morning in August, 2017, the two men met at LMN's office and drove together to a job site about an hour and a half away, where they were finishing a piping job. Alexander drove them to the site in one of LMN's trucks. Moss was quiet during the drive, but at some point, he told Alexander he had used drugs over the weekend.[1] He made comments about whether life was worth living, and he talked about his young son.

---

[1] Alexander acknowledged that he did not inform his supervisor about Moss's drug use, despite company policy requiring he do so, in part because Moss did not seem to be under the influence at the time.

Alexander was aware that Moss was having some difficulty with the child's mother. Alexander noted that Moss seemed concerned, but was not agitated and did not appear to be under the influence of any drugs.

When they arrived at the job site, Moss continued making similar comments and asking Alexander about religion. Moss and Alexander prayed together.[2] Moss felt overwhelmed and disappeared for a while, and Alexander assumed he had gone to the bathroom. But unbeknownst to Alexander, Moss had actually gone to the third floor of the building to commit suicide. When he returned to Alexander, Moss was visibly agitated, crying, and sweating profusely. He began asking Alexander about heaven and hell, whether his son would go with him after he died, and how to bring religion into his life. Alexander instructed Moss to sit down and have some water, but Moss remained agitated and continued sweating. Concerned, Alexander brought Moss to the truck to cool off in the air conditioning. Alexander turned the truck on and left Moss sitting in the passenger seat as he went to finish the job. At that point,

---

[2] According to Moss, Alexander described religion as a "leap of faith," which Moss interpreted as a literal leap. Although Alexander denies that he ever said to take a "leap of faith," we construe the evidence in the light most favorable to the plaintiffs as the non-movants. *Gervin*, 354 Ga. App. at 11. In any event, Moss confirmed that he never told Alexander he planned to jump from the building or that he was suicidal before he took the truck.

Alexander thought Moss appeared to be in control of himself, even if not back to normal. But, as Alexander walked away from the truck, Moss drove off, causing multiple traffic accidents, including the ones that injured Self and Crann, before driving the truck into a restaurant. Moss later told Alexander he was trying to kill himself.

Alexander had never seen Moss act this way before, and he did not believe Moss to be suicidal when he left him in the truck. Instead, he thought Moss, who was a veteran, might be experiencing PTSD as he had on a job site once before. At the time of the accident, LMN did not permit Moss to drive the truck due to his prior DUI and reckless driving convictions.[3]

Moss later pled guilty to 16 counts of serious injury by vehicle, DUI (less safe), and reckless driving. Self and Crann filed separate suits against LMN and Moss, alleging claims of negligence in connection with Alexander's decision to leave Moss in the running truck knowing that Moss was suicidal.[4] LMN moved for summary

---

[3] Moss testified in his deposition that he had driven the truck before with permission, but that he had only moved it at a job site and had not driven it on the roadway. Alexander disputed that Moss ever drove the truck.

[4] Both plaintiffs also raised claims of negligent hiring, training, and supervision; respondeat superior; negligent entrustment; punitive damages; and attorney fees. The trial court granted summary judgment on all claims, but Self and

judgment, arguing, as is relevant to this appeal, that Moss's criminal conduct was the proximate cause of the plaintiffs' injuries. Citing *Johnson v. Avis Rent A Car System*, 311 Ga. 588 (858 SE2d 23) (2021), the trial court granted summary judgment, and these appeals followed.

As both plaintiffs raise the same argument, we consolidate these appeals. In their sole enumeration of error, Self and Crann argue that the trial court erred by finding as a matter of law that Alexander's conduct was not the proximate cause of the injuries because Moss's actions were a foreseeable risk that Alexander should have appreciated. We are not persuaded.

To state a negligence claim, the plaintiff must establish a legal duty; a breach of the duty; causation; and damages. *Paradise Entertainment Group v. Favors*, 363 Ga. App. 636, 639 (1) (a) (871 SE2d 916) (2022). With regard to causation, the plaintiff must show that the alleged negligence was both the "cause-in-fact" and the proximate cause of the damages. Id. As we have explained, "[p]roximate cause is that which, in the natural and continuous sequence, unbroken by other causes, produces

---

Crann challenge the order only as it regards the negligence claim. Thus, they have abandoned any claim of error with regard to those other issues. Court of Appeals Rule 25 (d) (1).

5

an event, and without which the event would not have occurred." (Citations omitted.)

Id.

> In this regard, a negligent actor who breaches a duty to another is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. It is important to recognize that probable, in the rule as to causation, does not mean "more likely than not," but rather "not unlikely"; or, more definitely, . . . such a chance of harmful result that a prudent man would foresee an appreciable risk that some harm would happen. . . . And, while proximate cause is ordinarily a jury question, it will be determined by the court as a matter of law in plain and undisputed cases.

(Citations and punctuation omitted.) Id. at 639-640 (1) (a).

> Where the injuries are the result of a criminal act by a third party, however,

> the rule is that an intervening and independent wrongful act of a third person producing the injury, and without which it would not have occurred, should be treated as the proximate cause, insulating and excluding the negligence of the defendant. But, this rule does not insulate the defendant if the defendant had reasonable grounds for apprehending that such wrongful act would be committed. Stated differently, if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original

wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.

(Citations omitted.) *Paradise Entertainment Group*, 363 Ga. App. at 640 (1) (a); see also *Johnson*, 311 Ga. at 592-593.

Applying this rule, we recently explained, "[a] determination that a defendant's conduct was not the proximate cause of the injury is not a determination that no causal connection existed but that, as a matter of 'policy,' the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery." (Citations and punctuation omitted.) *Blondell v. Courtney Station 300 LLC*, 362 Ga. App. 1, 5 (1) (865 SE2d 589) (2021). The benchmark is foreseeability, and where the criminal conduct is not foreseeable, the rule acts to limit liability. Id.

Here, relying on *Johnson*, the trial court found that Alexander's negligence was not the proximate cause of Self's and Crann's injuries due to Moss's intervening criminal conduct. In *Johnson*, our Supreme Court held that a rental car company and its manager were not liable for injuries due to the intervening criminal conduct of an employee who stole a car, engaged in a high-speed chase, and crashed into a wall where the plaintiffs were seated. 311 Ga. at 594-598. In so holding, the Court

7

determined that the criminal conduct was not foreseeable because "[a] 'probable or natural consequence' is not the same thing as a 'possible' consequence where that possible consequence is not reasonably predictable." Id. at 597; see also *Southern Railway Co. v. Webb*, 116 Ga. 152, 156 (1) (42 SE 395) (1902) ("whether or not the intervening act of a third person will render the earlier act too remote depends, simply, upon whether the concurrence of such intervening act might reasonably have been anticipated by the defendant.") (citation and punctuation omitted). The Court noted that there was no evidence that would have made the theft and high-speed chase reasonably predictable, but rather showed only that such a result was "merely possible, according to occasional experience, and not probable, according to ordinary and usual experience." (Citation and punctuation omitted.) *Johnson*, at 594-595.

Applying this rule to the instant case, we conclude that the trial court properly granted summary judgment because Moss's criminal act of stealing LMN's van and driving into traffic was not a probable consequence of Alexander's conduct. *Johnson*, 311 Ga. at 597. Although there were signs that Moss was struggling emotionally, Moss's theft of the truck in an attempt to commit suicide was not a "probable and natural consequence" that Alexander "could reasonably have . . . anticipated, apprehended, or foreseen[.]" Id. at 593. Moss and Alexander both knew that Moss

8

was not permitted to drive the truck, and he had never taken the truck before without permission. Moss did not appear to be under the influence of drugs, he had not previously experienced any kind of impulsive behavior on the job site due to his PTSD, and he had not made Alexander aware of his earlier attempt to jump from the building.

Thus, as the trial court properly found, Moss's conduct was "too remote" as a matter of law to render LMN liable. *Johnson*, 311 Ga. at 594-598; see also *Goldstein, Garber & Salama v. J. B.*, 300 Ga. 840, 842-843 (1) (797 SE2d 87) (2017) (no proximate cause between dental practice's allegedly insufficient sedation policies and anesthetist's sexual assault of a sedated patient); *Van v. Kong*, 344 Ga. App. 754, 756 (811 SE2d 474) (2018) (homeowner who allowed estranged son-in-law to enter home, after which he stabbed homeowner's daughter, was not liable for son-in-law's conduct because conduct was not foreseeable despite son-in-law's previous arguments with daughter); *Butler v. Warren*, 261 Ga. App. 375, 378 (2) (582 SE2d 530) (2003) (owners could not anticipate the employee would take truck without permission even though owner left keys in the truck); *Long v. Hall County Bd. of Commrs.*, 219 Ga. App. 853, 855-856 (1) (467 SE2d 186) (1996), abrogated on other grounds by *Ga. Forestry Comm. v. Canady*, 280 Ga. 825 (632 SE2d 105) (2006)

9

(owner of vehicle not liable where he left keys in the car and prisoner escaped custody and stole it before causing accident).

Accordingly, we conclude that the trial court properly granted summary judgment, and we affirm.

*Judgments affirmed. McFadden, P. J., and Brown, J., concur.*